WYNETTA TAYLOR
3717 W BLACKHAWK DR
GLENDALE, AZ 85308
Phone (602) 596-5180
Fax    (480) 914-1368
No1sabovethelaw@gmail.com

✓ FILED ___ LODGED
___ RECEIVED ___ COPY

DEC 1 5 2025

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

WYNETTA TAYLOR

    Plaintiff,

vs.

ALASKA AIRLINES, INC.,

        Defendant,

Case No.:    **CV25-04668-PHX-MTM**

(1) BREACH OF CONTRACT;
(2) NEGLIGENT HIRING & RETENTION;
(3) WORKPLACE HARASSMENT;
(4) DISCRIMINATION;
(5) WRONGFUL TERMINATION;
(6) INTENTIONAL INFLICTION OF
    EMOTIONAL DISTRESS;
(7) RETALIATION

## COMPLAINT FOR WRONGFUL TERMINATION AND RELATED CLAIMS

Plaintiff WYNETTA TAYLOR, files this complaint of and against ALASKA AIRLINES, INC. (Defendants). The Plaintiff is seeking damages, according to proof at trial, for harm caused by ALASKA AIRLINES and their conspirators. The Plaintiff alleges and will show unto the Court the following:

WYNETTA TAYLOR PRO SE
3717 W BLACKHAWK DR.
GLENDALE, AZ 85308

WYNETTA TAYLOR PRO SE
3717 W BLACKHAWK DR.
GLENDALE, AZ 85308

## THE PARTIES

Plaintiff, WYNETTA TAYLOR is and at all times mentioned herein was, an Arizona Employee and legal citizen in good standing in Maricopa County.

Defendant, ALASKA AIRLINES INC. is a Seattle Washington based airline. Office location for these proceedings, is located in Chandler Arizona.

## JURISDICTION AND VENUE

This Court has jurisdiction over all United States Constitution Civil actions. Jurisdiction is also proper under 28 U.S.C. 1331 because Plaintiff brings claims under Federal law, including Title VII of the Civil Rights Act of 1964 and FMLA. The Court has supplemental jurisdiction over state law claims under 28 U.S.C.1367. Venue is proper in the District of Arizona under 28 U.S.C. 1391 because the events occurred within this District and Defendants conducts business here in Arizona. Diversity Jurisdiction will apply with the Common Tort Law and State Tort Claims alleged.

## FACTUAL ALLEGATIONS

1. Plaintiff was employed by Alaska Airlines as a Reservations Agent from March 6, 2017 until January 24, 2024. This employment agreement was solidified by a signed contract.

2. Plaintiff consistently performed job duties satisfactorily, as reflected in performance reviews, commendations and a lack of and discipline in employee file.

3. Plaintiff engaged in protected activity, including filing complaints about Discrimination, Harassment and reporting illegal hiring practices and corporate unlawful conduct to the Government.

WYNETTA TAYLOR PRO SE
3717 W BLACKHAWK DR.
GLENDALE, AZ 85308

5. Shortly after complaining, Plaintiff experienced adverse treatment, including: office gang stalking, harassment and work sabotage.

6. (Temporal Proximity) I was retaliated against and fired 60 days following a sham Harassment Investigation by Employee Relations Director Steve Zwerin.

7. On January 24, 2024, the Defendant wrongfully terminated the Plaintiff's employment.

8. Office Manager Craig Trounce used false and pretextual reasons for the termination.

9. After Union review of the matter, Union Chair, Justin Bates deemed the Plaintiff's firing erroneous and demanded job reinstatement.

10. In conspiracy with the reported corruption of unfair employee practices, Government Fraud and Illegal Kickbacks, Alaska Airlines Executive Lori Bradshaw reviewed evidence that proved my unlawful firing, then failed her ethical duty to rectify the unlawful act of wrongful termination.

11. Plaintiff's protected status as Whistle blower afforded me protections under Retaliation Laws. This protected activity and complaints of Discrimination, was a substantial motivating factor in the unfair termination.

12. As a result, Plaintiff suffered lost wages, emotional distress, and other damages.

## CLAIMS FOR RELIEF

### COUNT 1- BREACH OF EMPLOYEE WRITTEN AND SIGNED CONTRACT

(A.R.S.44-101, A.R.S. 12-541, A.R.S. 47-1304, A.R.S. 23-350, A.R.S. 23-355, A.R.S 23-1501(A)(2)

1. The Defendant Breached a signed contract by ignoring Mandatory progressive-discipline Policies. I was abruptly fired with no fair warning, hearing or disciplinary progression.

3. The Defendant egregiously refused to pay my earned bonus for 2023. As written in the contract, under fairness and bonus agreements.

WYNETTA TAYLOR PRO SE
3717 W BLACKHAWK DR.
GLENDALE, AZ 85308

4. Existence of a Contract- A valid and enforceable contract existed between Plaintiff and Defendant. The contract contained clear terms, including the parties' mutual obligations, consideration, and agreement.

5. Plaintiff and Defendant entered into a valid and enforceable contract in which Plaintiff agreed to perform work for Defendant in exchange for compensation and other promised terms of employment. Plaintiff fully performed all duties owed under the contract, or was ready, willing, and able to perform. Defendant breached the contract by failing to comply with its material obligations, including but not limited to failing to pay agreed Compensation, and earned annual bonus, failing to follow contractual procedures, and failing to provide conditions and benefits expressly promised in the agreement. As a direct and proximate result of Defendant's breach, Plaintiff has suffered financial losses, loss of employment benefits, and other damages. Plaintiff has therefore stated a claim for breach of contract upon which relief may be granted.

6. All required elements have been plead in this complaint constituting a proper legal theory for relief. (Exhibits A1-A2, written contract agreement)

**COUNT 2- NEGLIGENT HIRING, RETENTION AND SUPERVISION**

(State Law Tort, FTCA Federal Tort Claims Act, Restatement of Agency 213, 42 U.S.C 2000e, 15 U.S.C. 1681, Civil 8.1-8.4, A.R.S.12-542

1. Negligent Hiring- after I made complaints of Harassment and Stalking to Supervisor Annette Montgomery and Employee Relations Director Steve Zwerin, the company Engaged in unlawful hiring practices that gave stalkers access to me as a current employee.

2: Negligent Entrustment- Stalkers were given authority and full access to all company equipment and computer systems for which they used to harm me on the job.

3. Negligent Supervision- The Defendant had a duty to Supervise and failed to intervene with daily work sabotage, verbal abuse and cyber stalking.

4. Steve Zwerin lead a mock or sham Harassment investigation. He knew who was Stalking and Harassing me and he made a conscious disregard to do nothing to stop it.

5. The Defendant had a duty to secure the workplace for employees and failed.

6. Breach of Duty was by hiring someone whom Defendant knew had hatred against me personally. I was stalked and sought out and located on my job. The Defendant should have known they were unfit, dangerous and posed a foreseeable risk to employees.

7. The Defendant ignored knowledge of prior misconduct, behavioral red flags, history of stalking, harassment available to Defendant at the time of hiring.

8. The Defendant then retained the stalker after the Plaintiff complained about the problem.

9. Forseeability, Causation and Damages apply.

10. Arizona recognizes negligent hiring as an independent tort when the employer knew or should have known of an employee's dangerousness making this a cognizable legal theory.

(Exhibits B1-B9, complaints to Alaska Legal and Alaska HR).

**COUNT 3- HOSTILE WORKPLACE PERVASIVE HARASSMENT**

(ACRA) A.R.S.41-1463(B), A.R.S.23-1501, Common Tort Law, A.R.S.13-2921, A.R.S.13-2921.02, A.R.S. 13-2916, A.R.S. 13-2923, A.R.S.13-1202, Title VII

1. I received daily anonymous phone calls of Harassment.

2. I was sent daily threatening messaging on the company's internal computer system.

3. My work equipment was sabotaged and rigged to fail.

4. Evidence of these acts were given to my Supervisor Annette Montgomery, harassment Investigator Steve Zwerin, Executive Lori Bradshaw and Company IT Dept. All complaints were ignored.

WYNETTA TAYLOR PRO SE
3717 W BLACKHAWK DR.
GLENDALE, AZ 85308

WYNETTA TAYLOR PRO SE
3717 W BLACKHAWK DR.
GLENDALE, AZ 85308

5. The Plaintiff belonged to a Protected Class under ACRA and Title VII by complaining And reporting illegal activity in the company.

6. The Plaintiff was subjected to unwelcome harassment in the workplace, including conduct, comments, intimidation such as being called a Karen, A Fucking Bitch and other behaviors that a reasonable person would find hostile, abusive, or offensive.

7. The severity of these incidents were pretty much "everyday" or "non-stop" as the stalker warned these harassing acts would be (in writing).

8. Plaintiff was subjected to unwelcome conduct in the workplace based on Plaintiff's protected status and/or in retaliation for protected activity. The conduct, including repeated harassment, intimidation, discriminatory remarks, and other abusive behavior, was severe or pervasive enough to alter the conditions of Plaintiff's employment and create a hostile, abusive, and intimidating work environment. Defendant knew or should have known of the harassment but failed to take prompt, effective corrective action, thereby violating its legal duty to maintain a workplace free of unlawful harassment. As a direct and proximate result of Defendant's actions and omissions, Plaintiff suffered emotional distress, loss of employment opportunities, and other damages. Plaintiff has therefore stated a claim for hostile work environment harassment upon which relief may be granted. Courts heavily weigh evidence of reported the harassment.

(Exhibits C1-C12 Harassment Evidence and Complaints to Management).

**COUNT 4- DISCRIMINATION WHISTLE BLOWER RETALIATION**

A.R.S.41-1463(B), A.R.S.41-1464, A.R.S.23-1501, A.R.S.13-2921, A.R.S.13-2916
A.R.S.13-2923, A.R.S.13-1202, Title VII

1. The Plaintiff was specifically singled out, isolated, and harassed by my colleagues.

2. The Defendant made false accusations tied to discriminatory motives for illegally firing the Plaintiff. The reasons given for termination were pretext and untrue.

WYNETTA TAYLOR PRO SE
3717 W BLACKHAWK DR.
GLENDALE, AZ 85308

3. The Plaintiff engaged in protected activity (complaint, report,) of unlawful activity.

4. The Defendant took an adverse action and terminated 7 years of uninterrupted service with the company. The Defendant ignored complaints of physical harassment, intimidation and Threats. The Defendant fired the Plaintiff 60 days following Harassment and Discrimination Investigation. The first protected activity.

6. The Plaintiff belonged to a Protected Class under ACRA and Title VII by complaining And reporting illegal activity in the company.

7. The Defendant fired the Plaintiff while covered under this protected class as mandated By Arizona Civil Rights Act, A.R.S. 41-1463(B) and Title VII.

8. The Plaintiff was fired within close proximity (6-days) of the second protected activity.

9. Whistleblowing is protected activity that may be plead as Retaliation under the Arizona Employment Protection Act (AEPA) A.R.S.23-1501(A)(3)(c)

11. The Defendant broke the law when they retaliated and fired the Plaintiff. The elements satisfy both Arizona and federal anti-discrimination frameworks, making this a cognizable legal theory. (Exhibits D1-D10 Formal Whistleblower Complaints).

**COUNT 5- WRONGFUL TERMINATION**

A.R.S.23-1501(A)(3), AEPA, A.R.S.Title 41-9, Title VII

1. The Plaintiff's termination breached an executed valid written employment contract. No disciplinary progression steps were followed.

2. The Plaintiff's termination violates Arizona anti-discrimination law.

WYNETTA TAYLOR PRO SE
3717 W BLACKHAWK DR.
GLENDALE, AZ 85308

3. The Plaintiff's termination is in retaliation for protected activities under state law. The Plaintiff complained about illegal acts and asserted her Constitutional rights.

4. The Plaintiff was terminated 60 days following Harassment and Discrimination Investigation with the Employee Relations Director Steve Zwerin.

5. The Plaintiff was employed by Defendant in the State of Arizona from March 6, 2017 to January 24, 2024. Arizona law prohibits employers from terminating an employee for reasons that violate the Arizona Employment Protection Act, A.R.S.23-1501(A)(3).

6. The Plaintiff engaged in conduct protected under AEPA, including, reporting in good faith a violation of Arizona or federal law, A.R.S.23-1501(A)(3)(c)(ii); exercising rights to oppose unsafe working conditions. The Plaintiff had a right to a harassment free workplace.

7. Reproting the Defendant's failure to provide a safe workplace was protected by statute and constitution.

8. The Defendant knew of the Plaintiff's protected activity, became angry and retaliated.

9. The Plaintiff's protected conduct was a substantial motivating factor in Defendant's decision to terminate Plaintiff.

10. The Defendant's conduct constitutes wrongful termination in violation of the Arizona Employment Protection Act, A.R.S.23-1501(A)(3), because Plaintiff was fired for engaging in statutorily protected activity.

11. The Plaintiff suffered damages including lost wages, lost benefits, emotional distress, reputational harm, and lost earning capacity.

12. Plaintiff is entitled to all available relief, including compensatory damages. This claim that fits within 23-1501(A)(3) is legally sufficient and cognizable. (Exhibits E1-E14 Termination Communications with Management).

## COUNT 6- INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Common Law Tort, State Tort Claim, Diversity Jurisdiction

1. Defendant engaged in extreme and outrageous conduct, including but not limited to, repeated verbal abuse and being called derogatory names.

2. The Defendant knew emotional harm was a highly probable result and intended to cause me emotional harm. I was the key or sole target. My equipment was rigged to fail. Direct Abusive and derogatory messages were sent to me personally. I was threatened with physical violence.

3. When I complained to Steve Zwerin Employee Relations about someone threatening to "Shoot" me, he lied and brushed it off as harmless, causing me severe emotional distress.

4. Annette Montgomery Supervisor, Craig Trounce Office Manager and Jeanne Davis Call Center Director were all aware that something dangerous and illegal was taking place in the company. They knew I was the only one these criminal acts were being directed against.

5. The Defendant worked with the culprits to unfairly force the Plaintiff out of the company.

6. The Defendant's conduct was not just insults, trivialities, or ordinary workplace friction; it constituted conduct that a reasonable person would regard as intolerable and outrageous.

7. As a direct and proximate result of Defendant's conduct, Plaintiff suffered severe emotional distress, including anxiety, humiliation, fear, loss of sleep, depression, mental anguish, and other psychological injuries. Defendant's actions were willful, malicious, and in conscious disregard of the Plaintiff's rights. This is cognizable legal theory satisfying all elements. (Exhibits F1-F14, Pervasive Workplace Abuse Evidence).

WYNETTA TAYLOR PRO SE
3717 W BLACKHAWK DR.
GLENDALE, AZ 85308

WYNETTA TAYLOR PRO SE
3717 W BLACKHAWK DR.
GLENDALE, AZ 85308

**COUNT 7- RETALIATION**

A.R.S.23-1501, A.R.S.23-425, A.R.S.41-1464, A.R.S.38-532, A.R.S.22-1394, 42 U.S.C. 2000e-3(A), 29 U.S.C.158(A)(1),157, 29 U.S.C.660(C), 18 U.S.C.1514(A), 31 U.S.C.3730 Title VII of the Civil Rights Act of 1964

1. Plaintiff engaged in protected activity, including reporting/complaining about conduct that violated Arizona law as protected by the Arizona Employment Protection Act.

2. Defendant knew that Plaintiff engaged in this protected activity.

3. After Plaintiff engaged in protected activity, the Defendant took adverse employment action against Plaintiff, including hostile treatment and termination of employment.

4. The Plaintiff engaged Protected activity. Reported illegal practices to the Government.

5. The Employer had knowledge of that activity. The Defendant was notified of reporting.

6. The Employer took an Adverse action following that activity. The Plaintiff was fired.

7. The Defendant fired the Plaintiff for complaining. Causal connection

8. The Defendant's adverse action resulted in harm to the Plaintiff.

9. As a direct and proximate result of Defendant's retaliation, Plaintiff suffered damages including lost wages, lost benefits, emotional distress, reputational harm, and diminished earning capacity.

10. Plaintiff is entitled to all remedies available under Arizona law, including compensatory damages, back pay, front pay, attorneys' fees, and any further relief the Court deems just and proper.

11. The legal theory above satisfies all required elements under AEPA and the Arizona Civil Rights Act, making this a Cognizable Legal Theory. (Exhibits G1-G2, recorded videos of harassment and work equipment sabotage).

This Complaint includes Evidence of Harassing Conduct including: Written or Digital Communications, Emails showing harassment, threats, insults and discrimination. Physical Documents from supervisor showing discriminatory reports. Meeting details with Management, No Write-Ups in employee file on record. Photographs and Images of hostile work environment conditions including offensive profanity name calling. Also included is the eye Witness Affidavit of Kennedy Rodgers.

6. Medical or Emotional Harm Documentation verifying emotional impact has been Included. FMLA or leave requests due to stress, anxiety.

7. Plaintiff was terminated from employment in violation of Arizona public policy and applicable federal statutes. Under the Arizona Employment Protection Act, A.R.S.23-1501, an employer may not terminate an employee for reasons that contravene state or federal law, including termination for reporting illegal conduct, refusing to engage in unlawful acts, exercising statutory rights, or engaging in protected activity. Plaintiff engaged in conduct protected by law and fulfilled all job duties in a satisfactory manner. Despite this, Defendant terminated Plaintiff's employment for reasons that violate public policy and constitute an unlawful retaliatory discharge. Defendant's actions were willful, intentional, and undertaken with disregard for Plaintiff's legal rights. As a direct and proximate result of Defendant's wrongful termination, Plaintiff suffered lost wages, lost benefits, emotional distress, and other damages. Plaintiff has therefore stated a claim for wrongful termination upon which relief may be granted.

WYNETTA TAYLOR PRO SE
3717 W BLACKHAWK DR.
GLENDALE, AZ 85308

WYNETTA TAYLOR PRO SE
3717 W BLACKHAWK DR.
GLENDALE, AZ 85308

## DAMAGES

The Plaintiff seeks :

Back pay and front pay, Compensatory damages in the amount of Ten Million Dollars **$10,000,000** for lost wages, lost earning capacity, emotional distress, reputational harm, and all other damages caused by the Defendant's egregious and cruel conduct;

Emotional distress damages: Ten Million Dollars **$10,000,000**.

Punitive damages due to Managements direct involvement in these illegal acts: Ten Million Dollars **$10,000,000**. Any other relief the Court deems just for blatant violation of The Plaintiff's Human Rights.

## DEMAND FOR A JURY TRIAL

PLAINTIFF, WYNETTA TAYLOR, individual Pro Se Litigant, hereby request a Jury trial verdict on all nine causes of action.

## EXHAUSTION OF FEDERAL ADMINISTRATIVE REMEDIES

It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission regarding the Defendants' alleged discriminatory conduct on May 8, 2023. The EEOC issued a Notice of Right to Sue letter, which I received on September 23, 2024.

## PRAYER FOR RELIEF

**THEREFORE,** plaintiff prays for judgment against defendant as stated above.

DATED: December 12, 2025

By:*/s/ Wynetta Taylor*
Pro Se Plaintiff

WYNETTA TAYLOR
3717 W. BLACKHAWK DR.
GLENDALE, AZ, 85308
(602) 596-5180
no1sabovethelaw@gmail.com

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

WYNETTA TAYLOR,
Plaintiff,

vs.

ALASKA AIRLINES INC.,
Defendant,

DECLARATION OF KENNEDY RODGERS IN SUPPORT OF THE PLAINTIFF'S WORKPLACE HARASSMENT COMPLAINT

**AFFIDAVIT**

## I. STATEMENT OF TRUTH

I, Kennedy Rodgers, of Glendale, Arizona in Maricopa County, Arizona, affirm that all provided information is correct and represents factual details concerning the job Harassment and Bullying of the Plaintiff, Wynetta Taylor. No part of this AFFIDAVIT is false nor does it omit significant facts relevant to the purposed for which it is sworn.

## II. PURPOSE OF THE AFFIDAVIT

The primary purpose of this AFFIDAVIT is to ensure transparency of my involvement in this case. It serves to confirm my identity and to formally state that I was an eye witness to Harassment on multiple occasions. Each incident I witnessed was recorded by me using my iphone.

WYNETTA TAYLOR PRO SE
3717 W BLACKHAWK DR.
GLENDALE, AZ 85308

## III. AFFIRMATION

I further declare that on multiple occasions I watched the Plaintiff being harassed and Bullied by people on her job. This Affidavit is made to assert my ongoing commitment to support the Plaintiff in this wrongful acts against her. The Plaintiff has suffered a lot stress due to bullying and unfair treatment on her job. On many nights I watched her Struggle in frustration trying to get into the system to work and the company was purposely locking her out. On other nights she would wrestle with people that would take over her computer and prevent her from working. Her computer screen would show typing going across the screen. She called me into her office on these occasions and asked me to record what was happening for her. I used my iphone and make videos of her computer screen. She is showing both of her open hands in the videos as I am recording.

## VI. CONCLUSION and CONFIRMATION

This Affidavit is made willingly to confirm the Harassment I witnessed and the amount of stress it caused the Plaintiff. She was very worried that people were trying to get her fired and she was right. Her job told her to show video proof of what was happening to her, she did that, and still did nothing to help her. I hoping this court of law will.

I substantiate the truthfulness and accuracy of each statement herein without any coercion or external pressure. This document stands as a testament to my commitment, honesty and integrity.

Dated   December 12, 2025

Kennedy Rodgers



2.    A copy of any discipline issued to an employee will be retained in the employee's local file and a copy will be furnished to the employee's local union representative or Chief Shop Steward. An employee and/or his/her union representative, upon authorization by the employee, will be permitted to review his/her local attendance records and discipline.

3.    The Union reserves the right to file written grievances (which will be subject to the normal grievance procedures) contesting the validity of the information used by the Company in issuing attendance discipline.

E.    Discipline Grievances not including Suspension or Discharge

In the case of any discipline not involving loss of pay (oral warning, written warning and final warning), the following procedure shall apply.

1.    No employee who has completed his/her probationary period, as set forth in Article 9, will be disciplined without first being advised of the charges and extent of discipline, in writing with a copy to the local Union representative within twenty (20) calendar days of the alleged incident, or twenty (20) calendar days of reasonable first knowledge of the incident. The twenty (20) calendar days does not include days in which the employee is not at work except for his/her scheduled days off. Not later than seven (7) calendar days after receipt of the above notice, the employee may request a hearing and such hearing will be conducted no later than seven (7) calendar days after the employee's request. The employee may be represented at such hearing by the Local Shop Steward and/or the Union General Chair or his/her designee. The Company representative conducting such hearing shall not be the person preferring the charges. Oral and written evidence may be introduced at such hearings and witnesses may be required to testify under oath. The employee and the Union may, upon request, examine the employee's personnel record prior to such hearing.

2.    Initial Hearing
Within ten (10) calendar days after the close of such hearing, the Company shall render its decision in writing and shall furnish the employee and his/her accredited Union representative a copy thereof. The requirement for a written decision may be waived by mutual agreement in writing.

3.    Secondary Hearing

67

A2.

If not satisfactorily settled, the General Chair or his/her designee may appeal for consideration to the appropriate Company officer, or his/her designee, for review within // thirty (30) calendar days of the date of the decision rendered in paragraph D.2. above. A meeting will be held within ten (10) calendar days and a decision rendered by the appropriate Company officer or his/her designee within seven (7) calendar days. In the event the issue(s) is not settled satisfactorily, the grievance may be appealed to the Grievance Review Board as described in paragraph B. above.

F.     Suspension and Discharge Grievances

In the case of an action involving discipline resulting in the loss of pay (suspension and discharge), the following procedure shall apply.

1.     No employee who has completed his/her probationary period, as set forth in Article 9, will be disciplined without first being advised of the charges and extent of discipline, in writing with a copy to the local Union representative within twenty (20) calendar days of the alleged incident, or twenty (20) calendar days of reasonable first knowledge of the incident. The twenty (20) calendar days does not include days in which the employee is not at work except for his/her scheduled days off. Not later than seven (7) calendar days after receipt of the above notice, the employee may request a hearing and such hearing will be conducted no later than seven (7) calendar days after the employee's request. The employee may be represented at such hearing by the Local Shop Steward and/or the Union General Chair or his/her designee. The Company representative conducting such hearing shall not be the person preferring the charges. Oral and written evidence may be introduced at such hearings and witnesses may be required to testify under oath. The employee and the Union may, upon request, examine the employee's personnel record prior to such hearing.

2.     Initial Hearing
Within seven (7) calendar days after the close of such hearing, the Company shall render its decision in writing and shall furnish the employee and his/her accredited Union representative a copy thereof. The requirement for a written decision may be waived by mutual agreement in writing.

3.     Secondary Hearing
If not satisfactorily settled, the General Chair or his/her designee may appeal for consideration to the appropriate Company

68



**B1.**

**ethics·point**



## YOUR REPORT KEY IS:

941111570601

**Write this down and keep this in a safe place!**
You will need your report key and the password you selected to check on your report In the future or to make a follow-up.



## PLEASE ALLOW 9-10 BUSINESS DAYS FOR PROCESSING AND REVIEW

Begin checking after 9-10 business days and then continue to check periodically to see if the organization has any additional questions for you to answer regarding your report.

## HOW TO FOLLOW-UP ON A REPORT



OR

Go to aag.ethicspoint.com

Call our toll-free hotline at
877-228-5419

Return to EthicsPoint home.

Privacy Statement | Terms of Use | Cookie Statement
© 2023 NAVEX Global Inc., All Rights Reserved.

SAS70 Type II Certified

PRIVACY FEEDBACK
POWERED BY TRUSTe

https://secure.ethicspoint.com/domain/en/report_information.asp



## Alaska Legal Dept-Restraining Order Inquiry

W Taylor <no1sabovethelaw@gmail.com>    Thu, Oct 5, 2023 at 3:27 AM
To: wynetta.taylor@alaskaair.com

Hello Becca,

Please add the attached item for discussion when we meet. This request was sent to the Alaska Legal Dept. on 05OCT2024. I look forward to speaking with you on these issues.

Hello Amber,

Attached is a very serious concern I have regarding my many complaints of stalking and harassment. This stalker contacted me at work recently and sent me a threatening message stating "I'm an employee now", I take this to mean a few things. 1. I can get to you more easily to disrupt your life now that I work for the company. 2. This person has knowledge of the complaints I sent only to management about them. 3. I don't even know who these people are, but management knows their identity. 4. Management was simultaneously in the process of hiring them while denying my harassment and retaliation ever happened in the Alaska position statement. My harassment has escalated now. Many days I am blocked out from working altogether. The people guilty of criminal harassment and stalking are being embraced by Alaska while I, with Union and Title VII protections, am being unfairly forced as unfit. I have been complaining of harassment and retaliation for 3 years now. I am very upset and stressed to learn these have been invited by Alaska with no regard for my safety. If these people have invaded my place of employment, please notify me. Please check the recent hiring list, going back at least 4 months. Attached you will see when they contacted me just recently. I'm afraid this constitutes negligent hiring, and it is very unsettling to me. To date, I have no answers and Alaska has many. Please let me know what I need to do if you have in fact now hired these stalkers. Please acknowledge their unlawful behavior and release their identity to me so that I may retain a restraining order. Thank you for your help with this urgent matter.

 @Known Stalker Hired.pdf
128K

B3

Wynetta Taylor
3717 W Blackhawk Dr
Glendale AZ 85308
No1sabovethelaw@gmail.com
(602) 503-6026

October 22, 2023

Alaska Airlines Inc.
Human Resources
19300 International Blvd,
Seatac, WA 98188

**FOIA Request**

Dear Ms. Rising,

Please accept this as an official freedom of information request. The purpose of this letter is to request information pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. section 552. I am requesting a list of all employees hired within the last 6 months please. I was stalked and criminally harassed on the job for close to 3 years. I have reason to believe this person has now calculated their way into becoming employed with the company. A formal restraining order is being filed with the court.

My rights have been egregiously violated, now they have followed me to my job. Swift action must be taken against this persons' illegal, inappropriate and unwanted advances into my life. Since we can all access the employee listing internally, I do not think it violates any privacy laws. This person would not be on the listing online yet since they are still on probation. I am requesting a list of the names of all employees hired within the last 6 months please. This information is vital for my next legal steps. Thank you very much for your time and for your help. You may contact me with any questions regarding this request.

Respectfully,

Wynetta Taylor

Employee Data Management

People Team



**Have questions? The People Resource Line can help.**

- Call: 844.899.3617
- Email: peopleresourceline@alaskaair.com

---

**From:** Wynetta Taylor <Wynetta.Taylor@alaskaair.com>
**Sent:** Sunday, October 22, 2023 10:31 AM
**To:** Rosemary Rising <Rosemary.Rising@alaskaair.com>
**Cc:** Kelly McKee <Kelly.McKee@alaskaair.com>
**Subject:** FOIA Request

Good morning Rosemary,

Please review the attached FOIA request. This information is needed as soon as possible, please. It is needed for a federal court restraining order filing. Anything you can do to help would be greatly appreciated. Thank you for your time.

Respectfully,

Wynetta Taylor

**B5.**

 Gmail

---

## Fw: FOIA Request

---

**From:** Wynetta Taylor <Wynetta.Taylor@alaskaair.com>
**Sent:** Monday, October 23, 2023 7:41 PM
**To:** Rosemary Rising <Rosemary.Rising@alaskaair.com>
**Cc:** Kelly McKee <Kelly.McKee@alaskaair.com>
**Subject:** Re: FOIA Request

Good evening Rosemary,

Thank you for getting back to me. I am making the request as a current employee concerned about a long time stalker. I have been complaining about this person and all of sudden they've been hired at the company. Do you think my workplace harassment improved or got worse since they entered? Things have gotten consideralby worse! This gives me reason for great concern. As an employee, a new employee list should not be privileged correct? Wouldn't this be accessible information to all of us as employees. I need this information for restraining order purposes. I would think helping me with this would be in Alaska's best interest. Since this is a dangerous situation that is foreseeable to the company. I have notified Alaska on many occasions. This situation also places other employees in an unsafe situation. If something dangerous happens on the job, Alaska was informed before hand. Please consider helping however you can. Thank you for your time.

Respectfully,
Wynetta Taylor.

---

**From:** Rosemary Rising <Rosemary.Rising@alaskaair.com>
**Sent:** Monday, October 23, 2023 5:52 PM
**To:** Wynetta Taylor <Wynetta.Taylor@alaskaair.com>
**Cc:** Kelly McKee <Kelly.McKee@alaskaair.com>
**Subject:** RE: FOIA Request

Good afternoon Wynetta,

We received your FOIA request requesting a list of employees.

Alaska is a private company, and is not subject to the Freedom of Information Act provisions. We are not able to assist you with your request.

Take care,

Rosemary

Assoc People Ops Specialist



Wynetta Taylor
3717 W. Blackhawk Dr
Glendale, Arizona 85308

October 13, 2023

Alaska Airlines Inc.
Human Resources and Alaska Legal Department
5530 W Chandler Blvd Ste#1
Chandler, Arizona 85226

Dear Human Resources and Alaska Legal Department:

Request for information from the unlawful workplace investigation findings. The names of those that have grossly violated my rights will be listed there. Those names are needed to complete a pending restraining order with Maricopa County Federal Court.

I am requesting the names from the investigation. For possible negligent hiring purposes, I am requesting the hire date of those involved with illegal behavior. A long-standing stalker was hired within the last 4 or 5 months. I am unable to go forward with my permanent order of protection petition without confirmation of the name. Getting this order approved by the court is an urgent matter.

Please send this information to:

Alaska Airlines Inc.
19300 International Blvd,
Seatac, Washington 98188

Please contact me at the return address listed above if you have any questions or need additional information. An e-mail can be sent to no1sabovethelaw@gmail.com.

Thank you for your assistance.

Sincerely,

Wynetta Taylor

**B7.**

## Fw: Restraining Order Petition on Hold

From: Amber Johnson <Amber.Johnson@alaskaair.com>
Sent: Wednesday, October 11, 2023 10:29 AM
To: Wynetta Taylor <Wynetta.Taylor@alaskaair.com>
Cc: Becca Weber <Rebecca.Weber@alaskaair.com>; Cheri Starkey <Cheri.Starkey@AlaskaAir.com>
Subject: RE: Restraining Order Petition on Hold

Hello Wynetta,

Becca, copied here, is handling this investigation. If you have any questions regarding this investigation or have further information, please feel free to contact her directly.

Thank you,

**Amber Johnson**

Corporate Compliance Analyst

Legal Division | Alaska Airlines

P-206-392-5165

Amber.Johnson@alaskaair.com

From: Wynetta Taylor <Wynetta.Taylor@alaskaair.com>
Sent: Tuesday, October 10, 2023 1:43 AM
To: Amber Johnson <Amber.Johnson@alaskaair.com>
Cc: Becca Weber <Rebecca.Weber@alaskaair.com>; Cheri Starkey <Cheri.Starkey@AlaskaAir.com>
Subject: Restraining Order Petition on Hold

Hello Amber,

I am following up on my request for an investigation into the most recent hires. The stalker I complained about was most likely within the last 4 months. They contacted me at work on the Alaska Airlines internal Five9 system on August 31, 2023. I need the names of these people and their hire dates. Their criminal harassment and stalking of me dates back to September of 2021. My Order of Protection Petition with the court is on hold pending this information. Please let

me know when it can be made available to me. Thank you for your time and for your help on this matter.

Respectfully,

Wynetta Taylor

**Wynetta Taylor**

Reservations Sales Agent

W – 623-271-7198



Changes to Inappropriate Interaction - Disconnect: Wynetta Taylor

**B9.**

From: Wynetta Taylor <Wynetta.Taylor@alaskaair.com>
Sent: Sunday, August 1, 2021 6:28 PM
To: Jeanne Davis <Jeanne.Davis@AlaskaAir.com>
Subject: Re: Changes to Inappropriate Interaction - Disconnect: Wynetta Taylor

Hello Jeanne,

Thank you again for looking into this issue. I realize you have a tremendous number of things to handle daily within the operation. With the course of harassing events that have taken place and the absence of a logical explanation it is my belief that things are happening as described. I will continue reaching out to my local leadership for assistance with any further incidents that violate company policy. Thank you again for your time. I'm sorry it was for this reason. I would have loved talking to you about something progressive, like the exciting pace in which guest have returned to air travel and the possibilities you see for the contact centers.

Respectfully,
Wynetta

From: Jeanne Davis <Jeanne.Davis@AlaskaAir.com>
Sent: Thursday, July 29, 2021 11:38 AM
To: Wynetta Taylor <Wynetta.Taylor@alaskaair.com>
Cc: Craig Trounce <Craig.Trounce@AlaskaAir.com>; Stacy Jacobs <stacy.jacobs@alaskaair.com>
Subject: RE: Changes to Inappropriate Interaction - Disconnect: Wynetta Taylor

Wynetta,

Again, I am so very sorry for the extremely inappropriate behaviors of the below individual. I am going to watch in case he calls again. Unfortunately we do not have any additional contact for him, otherwise we would certainly reach out and send him a cease and desist letter, advising him we do not tolerate such behavior.

I am sorry to hear that you are receiving a large number of harassing type calls. I know there has been an increase across the board, and for you to indicate that nearly 50% of your calls are harassing, that is unacceptable. With that said, there is no way for us to stage calls to an agent based on the **behavior** of the individual. Our call routing is based on the reason for the call, the need the individual has, and/or their status, . Call are filtered to an agent based on their skill set, for example, but not limited to, MVPGOLD, (General) Res, Partner, Spanish, and then we have the internal type calls as well, such as Rates, Lead, etc.

Your current skills are set as:





From: Wynetta Taylor
Sent: Wednesday, December 7, 2022 2:19 AM
To: Annette Montgomery <Annette.Montgomery@alaskaair.com>; Bryce Kelly <Bryce.Kelly@alaskaair.com>
Subject: FALSE Pre-text 07DEC22

Hello Annette,

The false excuse for this harassment is that my keyboard is causing this. The so called "stuck" key, the wavy dash/swung dash is located next to the number 1 as shown on the attached photo of my keyboard. The examples listed below show this happening after any letter is typed. So how exactly is does this happen? It doesn't!

Respectfully,
Wynetta

Thi`s `will ````b`e` reported

`````````May I have your confirmation code, please? I `will tr`y my best to assist you. I may have to `as`k `you to call back.

I apologize`, an employee is` currently tampering with my comp``uter.

`````````````````````````````````````````I apologize`, an employee is` currently tampering with my computer.```````````````````````````````````````

``~~They are

`````````````I `apologize

My comput`e`r` `i``s ``being tamper`ed wi`t`h`.`

**Wynetta Taylor**
Reservations Sales Agent
W — 623-271-7198

**Alaska.**
AIRLINES

This e-mail and any attachments may contain confidential and privileged information. If you are not the intended recipient, please notify the sender immediately by return e-mail, delete this e-mail and destroy any copies. Any dissemination or use of this information by a person other than the intended recipient is unauthorized and may be illegal. **Think trees. Think twice about printing this email.**

12/8/22, 8:12 PM





1 >

● Live Chat ⊙ 3:15

Wynetta Taylor, Pending

The customer may have been disconnected so your messages will not be received by the customer. The chat session will be terminated in 3 minutes if the customer does not reconnect.

Thank you thi's is' 'Wynetta, How may I `assist?` I "apol`gize""`, `som`e`one i's """""""""""""""""""illegall""""":""`y tampering with "m`y conpu"""""t`er`.`

P~le`as`e """"c`all `in` `a`gain`, `I . """""apo`lo`g`i`ze"""""""""""""""""""""""""""""""""""""""""""""""""""""""""""""""

""""""""""""""""""""""""""""""""""""""""""""""""""""""""""

""""""""""""""""""""""""""""""""""""""""""""""""

""""""""""""""""""""""""""""""""""""""""""""""""""""""""""""



✉️      ⊠      ✈ Send

1/1

12/8/22, 11:52 PM





● Chat Wrap-Up ⓞ 6:20| 0:11

1 >

11:50pm

When I tried to book my trip it gives me a warning

Wynetta Taylor, 11:52pm

Thank you for contacting Alsaka, this is Wynetta. You may call in to book""""with an agent on the phone. 800-252-7522""""""""""""""""""1 apologize 'for the inapproplate behvior. """"""""""Please' """"call "in """"aga'in'.' """"""""""""""""""""""""""""""""""""""""""""""""""""""

""""""""""""""""""""""""""""""""""""""""""""""""""""""""""""""""""""""""""""""""""""""""""""""""""""""""""""""""""""""""""

""""""""""""""""""

""""""""""""""""""""""

""""""""""""""""""""""""""""""""""

""""""""""""""""""""""""""""""""""""""""

""""""""""""""""""""""""""""""""""""""

""""""""""""""""""""""""""""""""""""""""""""""

User ended the chat.

Set Disposition...

1/1

12/8/22 4:09 AM

Live Chat @ 12:36



C4.

1207am

I have a credit for ~~someone who has been missing for about six months~~ I was hoping that it can be transferred to myself. I know that's not something you normally do but I was hopeful in this unique scenario something can be done.

Wynetta Taylor, Pending

The customer may have been disconnected so your messages will not be received by the customer. The chat session will be terminated in 3 minutes if the customer does not reconnect.

Thank you for contacting Alsaka, this is Wynetta.

I'm sorry I a'p'o'l'o giz'e

S'o me'on'e 'is 'in my "copmu't'e'r c'a'u'si'ng thi's".

~P~leas''e 'co'n'tact u's 'aga'i'n



    Send

1/1

C5.

SMS Wrap-Up 17:07| 2:20

- Interaction
- Chat
- Timeline
- 

7:16pm

If I book a companion trip and need to change the dates, do I lose the award or can I make a date change?

Wynetta Taylor, 7:19pm

Thank you for waiting, this is Wynetta. No, i~~~~~~~~~~~~t 'i's onl'y' 'l''.o'st if you 'cancel. ~~~~~~~~~~~~~~~~

~~~~~~~~~~~~~~

~~~~~~~~~~~~~~~~

~~~~~~~~~~~~~~~~

~~~~~~~~~~~I 'apologize

7:19pm

If I book a companion trip and need to change the dates, do I lose the award or can I make a date change?

Wynetta Taylor, 7:19pm

~My comput'e'r' 'i''s ''being tamper'ed wi't'h',' ~~~~~~~~~~~~~~~~

~~~~~~~~~~~~~~~~

~~~~~~~~~~~~~~~~

~~~~~~~~~~~~~~~

~Thi's 'will ''''b'e' reported.'~~~~~~~~~~~~~~

~~~~~~~~~~~~~~~~

~~~~~~~~~~~~~~~~~~~~

~~~~~~~~~



## New Equipment

From: Wynetta Taylor <Wynetta.Taylor@alaskaair.com>
Sent: Tuesday, September 5, 2023 7;09 AM
To: Lori Well <Lori.Well@AlaskaAir.com>
Subject: Re: New thin client

Hello Lori;

I hope you had a nice holiday weekend. My weekend was wonderful. My family came into town from Minnesota for the weekend. We had a really nice time. I completed the Cloudflare speed test as you requested. The results are as follows:

Download Speed 27.3
Upload Speed 9.31
Latency 2.33

I am sorry to report that the not-so-good news is worse than you think. Last night I was harassed for over two hours and blocked from working. I have been voicing my concerns about how this unproductive behavior affects Alaska's bottom line. I don't think time on the clock should be spent wasting money. Yesterday was paid at premium holiday pay. The harassers and I were paid while not producing. These disruptions in my workday are against my will. I have been opposing the disparate treatment and constantly asking for help dealing with these people. This is very unfair to me, and it is also unfair to the company. We are here to work. We are being paid to work. Nothing else should be happening here, but professionalism and work.

Thank you very much for contacting Endpoint Engineering. Please let them know the harassment is from the time I log on at 8:00 p.m. until the time I sign out at 6:30 a.m. It is literally throughout the duration of my 10-hour work shift. They are on the system in the background parallel with me as I am working. They do things like press and hold down keys to prevent me from typing while I'm working. They delete things from my notepad when my attention is on my other monitor. They pose as Alaska guests to contact me with harassment and threats. This disruption is constant. That is why it is so discouraging that the monitoring mechanism added to my computer months ago has never witnessed or captured any of this activity. Per Alaska's amended position statement on 30 August 2023 to the Arizona Attorney General's Civil Rights Division, no harassment or computer tampering has ever happened. My complaints are being called frivolous and without merit while the retaliatory behavior towards me continues every day.

Attached you will see the stalking message from 01 Sep 2023. This is a threat letting me know they are now on the Alaska payroll. I am not sure what "I'm an Alaska employee **now** means". I am being stalked and harassed at work. I have been reporting this to leadership for some time now. Certainly, the stalker/culprit can't be a new hire now. How can this be? Now this person is saying they are closer to me. This threat is concerning. Maybe a look at the most recent hires will provide some answers to this situation. I sent you the old equipment back. You should receive it soon. Thank you again, Lori. I am very appreciative of your efforts to find a resolution situation.

C7.

**Closing out your investigation**

Steve Zwerin <Steven.Zwerin@alaskaair.com>
Tue 11/14/2023 11:01 AM
To:Wynetta Taylor <Wynetta.Taylor@alaskaair.com>

Good morning Wynetta,

Thanks for meeting with me on October 30th. We met to follow up on the investigation into your concerns about your computer being hacked. You also explained that you believed someone in Alaska Airlines leadership was taking action to get you terminated from employment.

You had raised several incidents that you believed demonstrated that your computer or technology had been hacked:

1. A customer named "A. Severance." You explained that you believed this was the company attempting to have you agree to a severance agreement to leave the company.
2. Another customer named "Wendy Shoots." You stated that you felt this was the company saying it wanted to harm you.
3. Another customer stating, "I'm an Alaska employee now." You believed this was evidence that an employee was going to do harm to you.
4. You believed there was some sort of interference with your computer. Namely, you stated that you were unable to log onto the computer at times, and that in chat sessions, something would randomly insert symbols, such as commas or periods instead of what you'd intended to type.

I explained in our call that our Internet Technology (IT) team had done an intensive, thorough investigation into your concerns. They did not find any evidence of interference to your computer or software. I also explained that we had also researched each of the three incidents you raised in #1-3 above. We had determined that these were legitimate customers/guests, and that there was no indication that these were anything but legitimate guest interactions.

You stated that you weren't surprised that we didn't find anything because we (IT and HR) were part of Alaska Air Group, and this only proved there was no external hacking. You said you believed there was internal hacking, and this was proof that this was being done by an external entity.

You also shared your belief that all of this is evidence that an Alaska Airlines leader is attempting to sabotage your employment. I explained that without details to who you believed was doing this, and how they were doing it, I could not investigate further. I again explained that IT looked at everything possible for any hacking or corruption to your computer and software by any entity--- internal and external--- and found nothing. I then explained that I'd gone as far as I could with my investigation given the information provided, and was closing it out shortly.

Thank you again for your time and professionalism. Please let me know if you have any questions or concerns.

Regards, Steve

**Steven Zwerin** *(he/him/his)*
Director, Employee Relations, Mediation, and Investigations (ERMI)
19235 International Blvd
Seattle, WA 98188
Steven.zwerin@alaskaair.com



This e-mail and any attachments may contain confidential and privileged information. If you are not the intended recipient, please notify the sender immediately by return e-mail, delete this e-mail and destroy any copies. Any dissemination or use of this information by a person other than the intended recipient is unauthorized and may be illegal. **Think trees. Think twice about printing this email.**

C9.

---

## Close-Out Statement

---

W Taylor <no1sabovethelaw@gmail.com>                                    Mon, Nov 20, 2023 at 3:39 PM
To: wynetta.taylor@alaskaair.com

Good morning Steve,

Thank you for following up on the issues I raised for investigation. I appreciate you taking the time to go over my concerns. I respectfully disagree with you. I consider your findings to be inaccurate. There is a vast amount of evidence to support my allegations. I expected the investigation would be more in-depth so that we might get around to other things. Are there any statements other than "nothing happened" for the record? That would be needed to get to the bottom of what is happening. Since this did not happen, I must accept your investigation close-out. If this is where help from Alaska ends, I can take it from here.

There are illegal acts taking place in the company. Aiding and Abetting stalking against an employee is illegal. Alaska Airlines as I and the world know it, does not represent an unlawful and criminal culture. For this reason, I believe these crimes involve an outside entity. One that does not hold the same liability as Alaska Airlines/my employer. Out of the line of fire called liability, these people are using the airline while committing criminal misconduct and civil rights violations. I gather some people within Alaska are in tough positions at this time. They are in positions of knowledge about ongoing criminal activity against a coworker and the uncertainty of what to do with that knowledge. Although difficult, the uncertainty is puzzling. Our Alaska training alone tells us what to do with that Knowledge. I appreciate you and others who did elect to do the right thing. I would not want to harm or disparage this group in any way. For the others, I can only say how disappointing it is to see how an entire company receives the same ethical training and it is interpreted so differently now that the time has come to apply that training.

My computer and phone lines were interfered with. I did not use the term "hack" because hacking is to gain illegal access to a computer network, system, etc. The interference I reported was not hacking. While it was illegal company computer activity, the access was approved by Alaska leadership. These entities were permitted to stalk and criminally harass me every day on my job. Complaints were sent to management including Guest Care Director Jeanne Davis and supervisor, Stacy Jacobs. It is quite quizzical that to this date, Alaska has never found anything wrong. Nothing was "found" because leadership allowed me to be harmed while working to further Alaska Airlines' business. When they finally admit to this wrongdoing, they could make the argument that they never intended for me to be harmed. However, when I told them I was being harmed, they just ignored it and made no changes. Statistics and case law tell us that retaliation will follow due to my raising these violations. The Restraining Order Judge even stated his concern about my job being in jeopardy. I have done no wrong on my job. Domestic terrorism is illegal. Workplace abuse is illegal. Discrimination is illegal. Criminal harassment is illegal. Rights Violations are illegal. It doesn't matter who the bad actors are, no one gets a free pass to do these things to an employee.

Lastly, I would like to tell you about a traumatic incident I experienced as a baby, maybe 4 or 5 years old. My family and I, my father, mother, and siblings lived on the Northside of Chicago. One quiet night while we all slept, some people decided to send my Black African American family a message. They decided to send a notification to my family that we were not allowed to live there. That message came in the form of a Molotov cocktail being thrown in our garage. My parents, consumed with fear, rustled us out of bed and into a safe area. Unsure of what the immediate next move would be, our family stood close together in our pajamas and stared out the window as our vehicle and garage blew up. This enlightened group got their wish. Afraid for us, my parents left the north side of Chicago. My family was gone and we never looked back. No other Black family ever lived in that neighborhood.

Domestic terrorism, bigotry, and discrimination against another for any reason has always been and will always be wrong and illegal. There is a correlation between the story I shared and my current situation. This unfairness is being done to me on my job right now. The only difference is that I am no longer a terrified 5 year old. I can throw back now and my Molotov cocktail is the law. For a legal remedy to this situation, I will pursue help from an outside administrative agency.

Thank you again for your help Steve, and please send a heartfelt thank you to the others like yourself for me. Have a great week.

Respectfully,
Wynetta Taylor

C10.

**From:** Wynetta Taylor <Wynetta.Taylor@alaskaair.com>
**Sent:** Monday, November 7, 2022 8:48 PM
**To:** Annette Montgomery <Annette.Montgomery@alaskaair.com>
**Cc:** Bryce Kelly <Bryce.Kelly@alaskaair.com>
**Subject:** Re: Computer and Work Tampering 01NOV22

Hello Annette,

I hope your week is off to a good start. Thank you for getting back to me on this. These daily work disruptions have become constant. Attached you will see a couple of incidents with the last one being on THUR 03NOV22. As you can see, it is impossible to work like this. This hostile intrusive behavior interrupts my workflow. This happens right in the middle of working with guests. This has become extremely stressful. The time wasted is also costing the company money. Alaska is not paying anyone to behave in this unprofessional manner on the clock. We all know that proper management of AHT saves the company up to $80,000 a year, per agent. Imagine the profit loss taking place while this kind of unacceptable time-wasting behavior is being done by multiple employees.

I have taken the night off and I may be out tomorrow as well. I called in to report tonight only to be paid as sick pay, please. I will call tomorrow if things are not better. I may also be pursuing some time off under FMLA or another umbrella that will cover this situation. I will follow CCO's instructions and do what is being asked of me to help them get to the bottom of this. Thank you again for your assistance.

Respectfully,

Wynetta

 Gmail

**C11.**

## Fw: Stalker Information Request 21DEC23

Thu, Dec 21, 2023 at 1:03 AM

From: Wynetta Taylor
Sent: Thursday, December 21, 2023 1:03 AM
To: Steve Zwerin <Steven.Zwerin@alaskaair.com>
Cc: Westbrook, Deliah <deliah.Westbrook@azag.gov>
Subject: Stalker Information Request 21DEC23

Good morning Steve,

I know Alaska has closed their harassment Investigation. As you will see, my Notice Right To Sue was issued on 17OCT23. There is a 90-day filing timeline. I must file in court by the end of next month. In preparation for filing, I wanted to check with you again to see if there is an update on the stalkers' identity. This person would have been hired with the company around June or July of 2023. I must have a restraining order in place. This information will be vital to the next steps. As always, thank you for your time and your help.

Respectfully,
Wynetta Taylor



**Wynetta Taylor**
Reservations Sales Agent
W — 623-271-7198

*Alaska.*
A I R L I N E S

**Creating An Airline People Love**

*C 12.*

## Statement Following Meeting on 10JAN24

2 messages

W. Taylor <no1sabovethelaw@gmail.com>                                   Mon, Mar 11, 2024 at 9:53 AM
To: "Lott, Cryselda M - OSHA" <Lott.Cryselda.M@dol.gov>

From: Wynetta Taylor
Sent: Wednesday, January 10, 2024 11:37 PM
To: Annette Montgomery <Annette.Montgomery@alaskaair.com>; Naisin Ua <Naisin.Ua@alaskaair.com>; Sierra Makepeace <Sierra.Makepeace@alaskaair.com>
Cc: Craig Trounce <Craig.Trounce@AlaskaAir.com>
Subject: Statement Following Meeting on 10JAN24

Hello Annette,

This is my formal statement following tonight's meeting. I have also attached supporting documents excluding photos and videos. As I stated in the meeting and many complaints sent to you before, my performance will be unfairly impacted until this retaliation and harassment against me is stopped. You mention 90+ hours of work interruptions from me. That constitutes one week and one day. I have been complaining about these work disruptions for 3+ years now. You questioned me as if I would try to defraud the company of money when I was begging them to fix the problem so I could work uninterrupted. It was I who sounded the alarm to the company about how this unlawful behavior could affect company costs. Your "investigative" questions were about my performance and work interruptions but not the actual problem. In fact, you have never asked me any supervisory investigation questions about any of my complaints. It was almost as if you had never heard of any of my troubling working conditions before tonight. I have added some of those complaints for your remembrance.

You were right tonight when you said you have only been my supervisor for a year and therefore not responsible for anything prior. Alaska leadership as a whole is one, and no one did anything to stop the harassment. You mentioned watching my monitor while I was working during one of your meeting requests. Yet, it never dawned on you to "watch my monitor" to see if you could help me. Perhaps you could have witnessed some of the harassment and computer tampering I have complained about. This behavior was allowed to go unchecked and now, suddenly, we are in meetings about my performance? This is unacceptable and unfair treatment. As I stated in the meeting, I am doing all I can while Alaska states', "We have done all we can" and that was to find nothing. Unfortunately, I had to enlist outside help that will hopefully solve these in-house issues. I will review the company policies again and brush up on what is required of me. I will make sure that I continue to follow what is outlined therein. Thank you again for meeting with me. We will talk soon, take care.

Respectfully,
Wynetta Taylor





EEOC (Inquiry) Number: 540-2024-00211

# INQUIRY INFORMATION

## INQUIRY OFFICE

**Receiving:** Phoenix District Office

**Accountable:** Phoenix District Office

## POTENTIAL CHARGING PARTY

**Name:** Ms. Wynetta Taylor

**Address:** 3717 W BLACKHAWK DR

GLENDALE, AZ 85308

**Year of Birth:** 1973

**Email Address:** no1sabovethelaw@gmail.com

**Phone Number:** 602-503-6026

## POTENTIAL CHARGING PARTY'S DEMOGRAPHICS

**Gender:** Female

**Disabled?** No

**Are you Hispanic or Latino?** No.

**Ethnicity:**

**National Origin:**

## RESPONDENT/Employer

**Organization Name:** Alaska Airlines Inc.

**Type of Employer:** Business or non-profit organization that I applied to, work for, or worked for

**Number of Employees:** 20 or more employees

**Address:** 5530 W Chandler Blvd

CHANDLER, AZ, 85226

**County:** maricopa

**Phone Number:**

## LOCATION OF POTENTIAL CHARGING PARTY'S EMPLOYMENT

**Address:**

**County:**

## RESPONDENT CONTACT

**Name:** Alaska Airlines Inc.

**Email Address:**

**Phone Number:**

**Title:**

## REASON(S) FOR CLAIM

**Date of Incident (Approximate):** 08/31/2023

**Reason for Complaint:** Race, Age - I am 40 years of age or older, Retaliation - I filed a charge of job discrimination about any of the above, Retaliation - I contacted a government agency to complain about job discrimination,  Retaliation - I complained to my employer about job discrimination, Retaliation - I helped or was a witness in someone else?s complaint about job discrimination

**Pay Disparity:**

**Location of Incident:** Arizona

**Submission (initial inquiry) Date:** 10/10/2023

**Claim previously filed as charge with EEOC?** No

**Approximate Date of Filing:**

**Charge Number:** 540-2024-00211

**Claim previously filed as complaint with another Agency?** No

**Agency Name:**

**Approximate Date of Filing:**

**Nature of Complaint:**

## ADVERSE ACTION(s)

I was stalked and criminally harassed on the job for 3 years. I was retaliated against for complaining of sexual harassment. I complained to management, and they did nothing to stop the unlawful activity. My employer is conspiring with criminal state employees and the stalker to force me out of my job. My employer has negligently hired this stalker. They are looking to do end run around any strict liability for allowing outside parties to illegally enter the company and cause harm to employees. This stalker sent a threatening message to me at work on the company system, anonymously on August 31, 2023. They stated "I am an employee now". My employer has given them that access to me. They are withholding the names for my pending restraining order with the court against this person. I do not feel safe with a known stalker and my employer conspiring against me.

## APPOINTMENT

**Appointment Date and time:** 05/06/2024 08:15:00 MST

**Interview Type:** Phone

## APPROXIMATE DEADLINE FOR FILING A CHARGE: 06/26/2024

## Supplemental Information

**What Reason(s) were you given for the action taken against you?**

The initial filing was in OCT 2023. Since then, I have been retaliated against and fired, I filed whistleblower complaints against my employer Alaska Airlines. The reason they gave for my wrongful termination was performance. They retaliated against me to deter me from complaining. They wanted me to accept barbaric working conditions created by stalkers. The discrimination against me was just business as usual for the company. Before my complaints, I was never written up or disciplined for anything in a 7-year work period. I requested my full employment file from HR in May 2023, and it reflects no infractions. This intentional work sabotage was invented to create a pretext to fire me.

**Was anyone in a similar situation treated the same, better, or worse than you?**

N/A

**Please provide name(s) and email and/or phone number of anyone who will support your claim, and briefly describe the information this person will provide.**

Alaska Airlines Airport Operations Security should be questioned. My supervisor Annette Montgomery took part in the discrimination. My manager Craig Trounce. Arizona Attorney General's Office. Civil Rights Compliance Officer Deliah Westbrook.

**Please tell us any other information about your experience.**

I am an American citizen and resident of Arizona for 7 years. I was wrongfully terminated in retaliation for blowing the whistle on government fraud, money laundering, and illegal kickbacks. I was employed with Alaska Airlines for almost 7 years. I was harassed and abused on the job. I made many formal complaints about this unlawful workplace behavior before they retaliated and terminated me. Major crimes are going on at Alaska Airlines and I am not safe.

I believe that my director Jeanne Davis is involved with fraud and money laundering. She is using the airline as a front for some form of human exploitation. Criminal State employees and Alaska Airlines are using me to defraud the government. This conspiracy is why my harassment complaints of distress on the job were ignored. Alaska was paid to allow this abuse against me. While I have no evidence of this, Bank fraud, money laundering, and falsified documents are easy paper trails of evidence. I was retaliated for reporting this crime to the government. An immediate probe into Alaska Airlines Airport Security Operations will reveal the evidence. Thank you for your help.

D4.

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other Information before completing this form. | EEOC FEPA | 540-2024-00211 |

| Arizona Attorney General's Office, Civil Rights Division | and EEOC |
|---|---|
| State or local Agency, if any | |

| I Name (Indicate Mr., Ms., Mrs., Miss, Mx., Dr., Hon., Rev.) | Home Phone | Year of Birth |
|---|---|---|
| Ms. Wynetta Taylor | (602) 596-5180 | 1973 |

Street Address

3717 W Blackhawk Dr

GLENDALE, AZ 85308

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| Alaska Airlines Inc. | 501+ Employees | |

Street Address

5530 W Chandler Blvd

CHANDLER, AZ 85226

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| | | |

Street Address                                    City, State and ZIP Code

| DISCRIMINATION BASED ON | DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|---|
| | Earliest | Latest |
| Age, Retaliation | 01/24/2024 | 01/24/2024 |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

On or about March 6, 2017, I was hired as a Reservation Home Agent.

On or about January 24, 2024, I was terminated in retaliation for filing a Charge of Discrimination with the Arizona Attorney General's Office, Civil Rights Division (35A-2023-00231) in addition to engaging in a protected activity.

I believe I have been discriminated against because of my race, Black, in violation of Title VII of the Civil Rights Act of 1964, as amended and I believe I was discriminated against because of my age, 50, in violation of the Age Discrimination in Employment Act of 1967, as amended. I also believe I was retaliated against for engaging in a protected activity.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| Digitally Signed By: Ms, Wynetta Taylor 05/08/2024 | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |
| Charging Party Signature | |

Page 1 of 2



# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

Phoenix District Office
3300 North Central Avenue, Suite 690
Phoenix, AZ 85012
(602) 661-0002
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 09/23/2024

To: Ms. Wynetta Taylor
3717 W. Blackhawk Drive
Glendale, AZ 85308

Charge No: 540-2024-00211

EEOC Representative and email:    Jeremy Yubeta
Enforcement Manager
jeremy.yubeta@eeoc.gov

## DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

## NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign in to the EEOC Public Portal and upload the court complaint to charge 540-2024-00211.

On behalf of the Commission,

Melinda Caraballo
District Director



Wynetta Taylor
3717 W Blackhawk Dr
Glendale AZ 85308
No1sabovethelaw@gmail.com
(623) 320-6145

January 8, 2024

United States Attorney's Office
U.S. Attorney Breon Peace
271 Cadman Plaza East
Brooklyn NY 11201
(718) 254-7000 Fax (718) 254-7508

Dear U.S. Attorney Peace

I am writing you because I am in need of your help. I am an American citizen and resident of Arizona for close to 7 years now. I am contacting you because of your recent airline corruption case. I have been employed with my current employer Alaska Airlines for almost 7 years. I have been harassed and abused on the job. I made many formal complaints about this unlawful workplace behavior. The problem is, we are not just talking about your run of the mill workplace disagreements. This is well above the EEOC. There are some major crimes going on at Alaska Airlines and I am not safe.

It is my belief that my director Jeanne Davis is involved with fraud and money laundering. She is using the airline as a front for some form of human trafficking and exploitation. For her role in this conspiracy, Davis may have accepted over $3 million dollars. This was her personal payment in some kind of illegal purchase of people, me. Under what circumstances would an employer illegally receive money in exchange for people? This is why she has ignored my many complaints of distress on the job. She was paid to allow this abuse against me. While I have no evidence of this, facts and proof is your expertise. Bank fraud, money laundering and falsified documents are very easy paper trails of evidence. If you would just help me and please take a look, you will not be wasting your time. A probe into Alaska Airlines Airport Security Operations will reveal the evidence you need. Alaska Airlines Jeanne Davis is using the airline to conceal a criminal and corrupt scheme to defraud the government. Nothing I am reporting is false or intended to slander Davis. My statements are made in good faith with the penalty of perjury. Please assign an investigator to question Alaska Airlines Security Operations about these truthful allegations. Thank you very much for your help.

Respectfully,

Wynetta Taylor

D7.

## Homeland Security Terrorist Unit on 8/20/2023

---------- Forwarded message ----------
From: W Taylor <no1sabovethelaw@gmail.com>
Date: Sun, Aug 20, 2023, 6:32 PM
Subject: Homeland Security Terrorist Unit
To: W Taylor <No1sabovethelaw@gmail.com>

## Send a Fax Confirmation

| | |
|---|---|
| **Fax Sent To:** | 12027633017,Homeland Security Investigations; Scottsdale,Domestic Terrorism |
| **Reference ID:** | |
| **Fax Quality:** | Fine (Better Quality) |
| **Subject:** | Domestic Terrorist Group Complaint |
| **Coverpage:** | Please see the attached complaint sent to the FBI regarding domestic terrorists in Phoenix AZ. Please help by getting this to the correct person in the Homeland Security Terrorist Unit. HSI has a strong interest in domestic terrorism. I need them to look into this dangerous and urgent issue, please. Their starting point of investigation is Alaska Airlines in Chandler AZ. Thank you for your assistance with these crimes. Wynetta Taylor (602) 503-6026 |

You will receive an email to confirm that your fax was successfully transmitted.

 Gmail

D8.

## Injunction Against Harassment-208320
4 messages

**W Taylor** <no1sabovethelaw@gmail.com>
To: PeorlaCourtDocuments@courts.az.gov

Fri, Oct 27, 2023 at 12:09 AM

Good morning,

I will be requesting a permanent and irrevocable restraining order due to a long and ongoing illegal situation with criminal harassment, domestic terrorism, and my rights being violated. I am asking for the court's help with an immediate injunction against workplace harassment. The petition documents have been completed in AZPOINT. The file number is #208320. Please advise on the next steps to have this order granted. Thank you for your time and your assistance.

Respectfully,
Wynetta Taylor
(602) 503- 6026

---

**Peoria Court Documents** <PeoriaCourtDocuments@courts.az.gov>
To: W Taylor <no1sabovethelaw@gmail.com>

Mon, Oct 30, 2023 at 11:07 AM

Hello,

In order to file your petition with Peoria Municipal Court you must call the court during business hours and speak with a judicial assistant who will review the petition and provide further information.

Thank you,

Peoria Municipal Court

10100 N 83rd Ave

Peoria, AZ 85345

Phone: (623) 773-7400

Mon-Thurs 7am-6pm

---

From: W Taylor <no1sabovethelaw@gmail.com>
Sent: Friday, October 27, 2023 12:10 AM
To: Peoria Court Documents <PeoriaCourtDocuments@courts.az.gov>
Subject: Injunction Against Harassment-208320

This email originated from outside of the organization. Do not click links or open attachments unless you



**W Taylor** <no1sabovethelaw@gmail.com>                                              Tue, Oct 31, 2023 at 3:15 PM
To: Peoria Court Documents <PeoriaCourtDocuments@courts.az.gov>

Good afternoon,

You should have received a detailed email regarding my petition for a lifetime restraining order, case #208320. Please refer this supporting documentation to the judicial assistant for closer review. I will call for further directions on how to have this request granted. Thank you for your time and your help.

Wynetta Taylor
(623) 320-6145
[Quoted text hidden]

**W Taylor** <no1sabovethelaw@gmail.com>                                              Fri, Dec 13, 2024 at 3:39 PM
To: "W. Taylor" <wkktay@yahoo.com>

[Quoted text hidden]

DIO.

Respectfully,

Wynetta Taylor

(623) 320-6145

You will receive an email to confirm that your fax was successfully transmitted.

---

📠 @U.S. Attorney Peace 08JAN24.pdf
148K

---

Steve Zwerin <Steven.Zwerin@alaskaalr.com>                                        Fri, Jan 19, 2024 at 9:13 AM
To: W Taylor <no1sabovethelaw@gmail.com>

Good morning Wynetta,

Thank you for this email. I will add it to the file.

Regards, Steve

**Steven Zwerin** *(he/him/his)*

Director, Employee Relations, Mediation, and Investigations (ERMI)

This e-mail and any attachments may contain confidential and privileged information. If you are not the intended recipient, please notify the sender immediately by return e-mail, delete this e-mail and destroy any copies. Any dissemination or use of this information by a person other than the intended recipient is unauthorized and may be illegal. **Think trees. Think twice about printing this email.**

---

From: W Taylor <no1sabovethelaw@gmail.com>
Sent: Thursday, January 18, 2024 5:32 PM
To: Deliah.westbrook@azag.gov
Cc: Scott, Stephen <stephen.scott@azag.gov>
Subject: US Attorney Complaint

You don't often get email from no1sabovethelaw@gmail.com. Learn why this is important

*[EXTERNAL SENDER]*

## Send a Fax Confirmation

1. Fax Sent To:16025427601, Governor Katie Hobbs Arizona

Reference ID:
Fax Quality:Fine (Better Quality)



E1.

C 808 362-2671

craig.trounce@alaskaair.com

5530 Chandler Blvd. Ste. #1

Chandler , AZ 85226

alaskaair.com



This e-mail and any attachments may contain confidential and privileged information. If you are not the intended recipient, please notify the sender immediately by return e-mail, delete this e-mail and destroy any copies. Any dissemination or use of this information by a person other than the intended recipient is unauthorized and may be illegal.

Think trees. Think twice about printing this email.

**From:** Wynetta Taylor <Wynetta.Taylor@alaskaair.com>
**Sent:** Monday, January 22, 2024 7:25 AM
**To:** Craig Trounce <Craig.Trounce@AlaskaAir.com>; Annette Montgomery <Annette.Montgomery@alaskaair.com>; Sierra Makepeace <Sierra.Makepeace@alaskaair.com>; Naisin Ua <Naisin.Ua@alaskaair.com>; Amber Johnson <Amber.Johnson@alaskaair.com>
**Subject:** 18JAN24 Meeting Follow Up Statement

Hello Craig,

I hope you had a nice weekend. With the busyness in the operation right now, none of us have the luxury or excess of quiet time. I wanted to have my statement to you first thing Monday morning. First, I want to start by apologizing. I have no idea how we got here or why. What I do know is that I made numerous complaints of sexually harassing phone calls and I have had disparate treatment since then. I have been diligently searching for answers. Since the issues raised are unlawful workplace issues, I expected more from Alaska when I asked for help. Not only did I not receive support, but I am being retaliated against for complaining. This investigation into my performance is unfair and it checks all of the boxes for retaliation. There have never been any issues with any area of my employment. My over-achieving discipline and love for the airline industry have always been reflected in my performance. Now immediately following the close of my harassment investigation, my performance is being questioned. You stated the time period you are investigating in my work is from Oct. 2023 and Dec. 2023. The record shows that I have made 38 complaints of harassment to Alaska between Oct. 2023 and Dec. 2023. I apologize for attaching them to this email. There is no question when assessing what Alaska knew or should have known. I made you aware of the distress I was experiencing in the workplace.

Out of all the many complaints I have filed, I have never been questioned about the PII Information I submit as evidence. I was doing what I believed was helping a confidential investigation. I wanted to provide as much information as I could to help the investigators find answers. No one in leadership ever said the information I was sending them violated PII. I did not think I was doing anything wrong when reporting these incidents to management. Now, in retaliation for my complaints, someone is being untruthful and raising a convenient issue with my complaint documentation. My perception of this newfound issue is that it is a deterrent to my complaining altogether. In the meeting, you asked me if I recalled Annette asking me to remove my harassment folder from my desktop since it had guest information in it. As I stated to you in the meeting, that never happened. That discussion was never had. The fact that this made-up information is being presented is very concerning. Why would these false statements be coming from my leadership?

**E2.**

I find it intimidating to be questioned by you in an authoritative manner about computer tampering when I raised a previous harassment charge against you. In our last meeting with HR in Dec. 2022, I explained how you made just your face in a circle bounce across my computer screen like a basketball, while I was working with a guest. In the meeting, you told HR you may have been requesting a meeting with me in Teams. I responded that the office was not using Teams when this happened. I also stated that when I walked to your office to ask you why that was happening, you looked at me and said nothing. If you were requesting a meeting, you would have said so then. Furthermore, even if we used Teams at that time, everyone knows Teams does not work that way. A flash in the lower corner of the screen is not a face circle bouncing all over the screen from corner to corner like a ball. Nevertheless, this explanation was accepted.

I have my opinion, but I am not sure what is going on or why. I do not have the facts, but I am convinced that Alaska is fully aware. Now that Alaska has closed out its harassment investigation, what will happen when a governmental agency uncovers what is going on? I will continue asking for help. I will follow what you asked and take a video with my cell phone the next time someone takes control of my computer or locks me out of the system. This will be sent to you and IT.

Again, I do want to apologize for what is happening. It was never my intention to bring any unprofessionalism or non-workplace issues into the company. I have always maintained strictly professional relationships on the job. Anything less is unacceptable. That is why I am so relentless in putting a stop to this unlawful behavior. We are all here to do a job and that is the only thing that should be done here, Alaska Airlines work. I think we can all move forward keeping the furtherance and success of Alaska business at the forefront. That is all I am here to do. That is all I ever wanted to do.

Respectfully,

Wynetta Taylor

 Gmail

## Grievance Decision

1 message

**Justin Bates** <jbates@lamdl142.org>
To: "no1sabovethelaw@gmail.com" <no1sabovethelaw@gmail.com>

Fri, Apr 19, 2024 at 6:18 AM

Wynetta, I wanted to inform you that the company has rendered their decision and unfortunately the Union was unsuccessful in reversing the decision. I have attached the letter to this email and will be sending a formal closeout to of this case to you towards months end. I am very sorry that we were unable to get this erroneous discipline reversed. I do appreciate the time and effort you put in as well in supporting your case during the hearing.

In Solidarity,

Justin Bates

General Chair Alaska Airlines/ McGee Air Services

IAMAW Air Transport District 142

Cell# 907-205-9757

Email: jbates@lamdl142.org

This e-mail message and all attachments transmitted with it may contain legally privileged and confidential information intended solely for the use of the addressee. If the reader of this message is not the intended recipient, you are hereby notified that any reading, dissemination, distribution, copying, or other use of this message or it's attachments is strictly prohibited. If you have received this message in error, please notify the sender immediately and delete this message from your system. Thank you.

Labor Hearing Response Apr. 18 2024 - Wynetta Taylor 010414.docx
104K



**IAMAW DISTRICT 142**

IAM Air Transport District 142
9633 S 48th St, Ste 100
Phoenix, Arizona 85044
816-982-6480
iamdl142@iamdl142.org

**E4.**

May 1, 2024
File:   AS/PHX/COPS — 10414

Wynetta Taylor
3717 West Blackhawk Drive
Glendale, Arizona 85308

**Subject**        **Taylor, Wynetta**        **#10414**        **PHX**

Dear Wynetta:

Please be advised the above subject grievance has been heard at Step 2.  Attached is a copy of the decision.

After a thorough review of the facts and circumstances in this case, we believe we could not sustain our position before the System Board of Adjustment.  Therefore, no further appeal will be made, and the case is now closed in our files.

If you have any questions concerning this matter, feel free to contact me.  With best wishes, I remain

Sincerely and fraternally,

*Justin Bates*

Justin Bates
General Chair

JB/cg

Enclosure

cc:    N. Ua, Steward

**E5.**

## Taylor 2nd Hearing Videos & Photos
2 messages

W Taylor <no1sabovethelaw@gmail.com>                    Thu, Apr 4, 2024 at 12:47 PM
To: Lori Bradshaw <lori.bradshaw@alaskaair.com>
Cc: "jbates@lamdl142.org" <jbates@lamdl142.org>

 Taylor 2nd Hearing Videos & Photos.zip.

Hello Lori,

Thank you again for speaking with me in my 2nd step grievance hearing. This has been an extremely stressful situation. I was grateful for the chance to be heard by an Alaska executive. I am very impressed that you had some investigation background on my situation. It's a relief to know the consensus so far, with your IT and investigation team, is that there were no mechanical issues with my system. That is the very thing I was trying to explain. I'm excited to know this investigation will go in a different direction now. As I mentioned in my hearing, I am not looking to blame Alaska for the unlawful actions of others. I was only looking to Alaska for help. I never expected what happened instead. There are quite a few photos and videos in this email as you requested. I did not include all of them. I didn't want to pile all of them into this email. I just need you to get a clear view of the situation. Below is a brief explanation of what you are looking at in these photos and recordings.

**On the blue screens where it shows my full name:**

This is where I am being blocked from signing in and doing anything. Many of them will also have the "access denied" message with a red circle and x in the center. This harassment adversely affected my start time. I am always at work on time as required and unable to clock in on time because someone is intentionally preventing me from doing so. EEOC law states I cannot suffer a loss of pay due to harassment. It was my duty to inform Alaska immediately of the problem, which is what I always did. I take punctuality very seriously. My work record will show this. I was even issued a perfect attendance pendant by Alaska for having spotless attendance.

**On the Five9 screens:**

This is when I was signed into the main system fine and on the clock but blocked from logging into the Five9 system. While I am on the clock and at work, I am being harassed and prevented from working. In these photos where I enter my password, the entire space is filled with characters or bold circles. What is happening here is me trying to type in my password and someone in the background not allowing me to get in by pressing on keys. This was often done in a very aggressive manner. Some nights it would be like a tug-a-war struggle for the keyboard. When I typed one letter, they took control of the screen and filled the space in seconds. If you notice the speed of the cursor, we can assume that no one is typing. IT will confirm that is more consistent with someone simply laying on or pressing the keys down. This is what you will see in all of the videos. No matter what area I was working in, they would interrupt or disrupt my work with this same behavior. In the photo ending in #145, you can see where I just stopped struggling with them and watched to see how long they persist. The entire page is filled with useless marks from the key they are pressing. In all photos where you see these same random markings, this harassing work disruption is what is

**E6.**

happening. In some of the videos, I show both of my hands to eliminate any concerns of my somehow manipulating or taking advantage of this situation. While I am showing both of my hands, please pay attention to the screen and notice the cursor typing by itself at lightning speed. Knowing the issue was never mechanical, I was very patient with Alaska while going through the multiple equipment checks. I respected their troubleshooting process and waited for them to help me with the real issue. That help never came. They left me struggling with the unfair working conditions you see in these videos and photos; then fired me for it.

### Video ending in #246:

This was a long night of harassment. I am in the middle of sending a complaint to my supervisor by email. As you can see in the video, they did not want me to do this. They continued to block me to deter me from sending a complaint. I had to move over to my cell phone and personal email to send it to her that way. In anger and retaliation, this aggressive behavior would go on for hours.

### Photos with the just lower corner of my system:

This is where I took a photo to document the date and time to correlate with my written documentation of the incident in real time.

### Photo ending in #817:

This is a full view of how the interactions came to me. The record in its completion. The problematic ones all appear to be harmless on the surface but they have hidden messages. The whole point of this stalking behavior is to be inconspicuous. The intent of this psychopathic pathology is to intimidate and instill fear in a person while going unnoticed. In this interaction this person refers to their dog as a "killer". Am I supposed to believe this was an actual guest? Even an unacceptable breed as the pitbull would not be referred to as their "killer" dog. Furthermore, this "killer" dog traveled in the cabin underneath the seat? Receiving these kinds of messages everyday, all day along with the physical work disruptions painted a very clear and full picture of what I was experiencing. A fair and thorough investigation would have revealed this. This is not an issue of misunderstanding one or two reservations. My form 16 speaks about one reservation they determined was not harassment and how grateful the guest was. I am talking about a totality of 3+ years of harassment, stalking and retaliation.

### Photo ending in #435:

This is what I perceived to be a death threat from the stalker. You can see how the record came in to show the word "trip" missing the letter "t" so that it only shows the word "rip" meaning "rest in peace". They even strategically made a red arrow line up to point to the "rip". To someone looking at this for harassment value, it seems innocent. To someone being actively stalked, it is intentional, and I treated it as such. I don't have the luxury of waiting for someone to tell me when I am being stalked and harassed. Knowing a stalker was newly hired into the company was very unsettling.

As this and additional evidence show, there was never any violation of non-business-related record access. Any record that I receive is gaited to my incoming line according to my skill set. There was never any purposeful attempt to defraud the company by receiving my regular pay during this harassment. I was at work on time wanting, willing, and trying to work. My supervisor assured me that Alaska was investigating my reports and that I would not be penalized in my pay because of these illegal system lockouts. I never inappropriately used the misconduct reporting system. I reported what I believed was harassment. As instructed, I saved as much detail from that

Interaction for investigative purposes only. I never accessed a record for non-business purposes. I am the one who continued reporting PII non-compliance to Alaska. That was my duty. If I receive a guest interaction, I am the only one with a legal privy to that guest's information. There was a stalker simultaneously on my computer as I worked. This gave them unauthorized, non-business-related access to that guest's information. This violated the Alaska policy and government mandate to protect guest PII. This stalker on my computer with me now has illegal and non-business-related access to that record.

**E7.**

As I discussed in the 2nd hearing, this Form 16 is incorrect if it does not reflect the situation accurately. The evidence here shows some major discrepancies in what happened. The Form 16 does not explain what you now see is the truth. If the action taken against me is based on what is written in this form, I'm not sure how it can stand. I was stalked on my job. Form 16 provides no information on the steps taken to locate this person. The word "stalker" is not even written on the entire document. Replacing well-working equipment does nothing to correct the unlawful behavior of a stalker. I was fired and the true issue was never looked at. How can my chief complaint be omitted from the document used in my wrongful termination? There was no probe or questioning of the new hires between May 2023- Nov 2023 at MKE, ORD, and PHX. The focus was on the equipment only. This negated their efforts to fix the problem. The adverse action taken against me was a result of sabotage and it has caused me great harm. The unfairness of being denied my right to work and support my family is devastating. Again, I am not looking for a fight with or blame Alaska for the illegal acts of others. I am just asking Alaska for help since these illegal acts took place under their roof. I am hopeful that a fair resolution will be reached now that I am finally speaking to the right people. Thank you Justin and Lori for your time and your help.

Respectfully,
Wynetta Taylor

Taylor 2nd Hearing Videos & Photos.zip

E8.

Dear Human Resources Dept:

Please allow this email to serve as a request for my employment records maintained by Alaska Airlines Inc. I am seeking complete copies of the following please:

1.  My personnel records maintained by Alaska Airlines that relate to my performance or to any grievance concerning me.
2.  Any instrument signed by me relating to the obtaining or holding of employment.
3.  Any and all of my payroll records.

Please provide these documents as soon as possible, but not later than 21 days from the date of this request.
Please direct any questions about this request directly to me. Thank you very much for your attention to this matter.

Respectfully,
Wynetta Taylor

Wynetta Taylor

Reservations Sales Agent

W – 623-271-7198

[https://www.alaskasworld.com/applications/signatures/images/AS_logo.jpg]

This e-mail and any attachments may contain confidential and privileged information. If you are not the intended recipient, please notify the sender immediately by return e-mail, delete this e-mail and destroy any copies. Any dissemination or use of this information by a person other than the intended recipient is unauthorized and may be illegal. Think trees. Think twice about printing this email.

E9.

## Fw: Employee Records Request-W. Taylor PHX-RES -Case 155492

Wynetta Taylor <Wynetta.Taylor@alaskaair.com>

Wed 5/17/2023 9:28 PM

To:no1sabovethelaw@gmail.com <no1sabovethelaw@gmail.com>

---

From: peopleresourceline@alaskaair.com <peopleresourceline@alaskaair.com>
Sent: Wednesday, May 17, 2023 12:54 PM
To: Wynetta Taylor <Wynetta.Taylor@alaskaair.com>
Subject: Employee Records Request-W. Taylor PHX-RES -Case 155492

Hi Wynetta,

Thank you for reaching out to the People Resource Line. Your request has been submitted and our Employee Records Team will get back to you as soon as they can.

Take Care,

Patricia Warren
People Support Specialist
**Have questions? The People Resource Line can help.**
- Call: 844.899.3617
- Email: peopleresourceline@alaskaair.com

From Address: Wynetta Taylor <Wynetta.Taylor@alaskaair.com>
Received: 2023-05-17 04:45:49
To Addresses: AAGAstutePResourceLine@AlaskaAir.com
CC Addresses:
Subject: Employee Records Request-W. Taylor PHX-RES
Attachments:

Request For Employee Records

Re: Personnel records, employee agreements, and payroll records of Wynetta Taylor Reservations Sales Agent in Phoenix AZ

 Gmail

E10.

**Fw:Employee Records Request**

1 message

Wynetta Taylor <Wynetta.Taylor@alaskaair.com>
To: W Taylor <No1sabovethelaw@gmall.com>

Thu, May 25, 2023 at 6:48 PM

From: Rosemary Rising <Rosemary.Rising@alaskaair.com>
Sent: Thursday, May 25, 2023 11:24 AM
To: Wynetta Taylor <Wynetta.Taylor@alaskaair.com>
Subject: Records Request

Hello Wynetta,

I just thought I would send you an email letting you know we received your request for personnel records. I am still waiting to hear back from one of our departments from which I have requested information. Once I have the information, I will forward it on to you.

Regarding your payroll records, you would need to contact Payroll for that information. You can do that by submitting an Inquiry ticket through the Payroll Services link found on Alaskasworld (Benefits/Pay→Payroll Services Website).

Thank you,

Rosemary

Employee Data Management

People Team

7:30am -- 2:00pm

 *Alaska* | *HORIZON*
AIRLINES

**Have questions? The People Resource Line can help.**

- Call: 844.899.3617
- Email: peopleresourceline@alaskaair.com



To: Annette Montgomery <Annette.Montgomery@alaskaair.com>
Cc: W Taylor <no1sabovethelaw@gmail.com>, Cheri Starkey <Cheri.Starkey@alaskaair.com>, Naisin Ua
<Naisin.Ua@alaskaair.com>

Hello Annette,

This is an acknowledgement of receipt of the wrongful termination notice issued by Alaska Airlines on
04JAN2024.

---

From: Annette Montgomery <Annette.Montgomery@alaskaair.com>
Sent: Wednesday, January 24, 2024 8:18 PM
To: Wynetta Taylor <Wynetta.Taylor@alaskaair.com>
Cc: W Taylor <no1sabovethelaw@gmail.com>; Cheri Starkey <Cheri.Starkey@AlaskaAir.com>; Naisin Ua
<Naisin.Ua@alaskaair.com>
Subject: I6 notice

Hi Wynetta,

Please acknowledge receipt of the attached I6 by replying ALL to this email.

With gratitude,

**Annette Montgomery**

Supervisor, PHX Contact Center

Guest CARE/ Training Liaison

P 480.394.3005

C 641.870.7411

Annette.Montgomery@alaskaair.com

5530 W Chandler Blvd. Ste. #1

Chandler , AZ 85226

alaskaair.com

  
AIRLINES

This e-mail and any attachments may contain confidential and privileged information. If you are not the intended recipient, please notify the sender immediately by return e-mail, delete this e-mail and destroy any copies. Any dissemination or use of this information by a person other than the intended recipient is unauthorized and may be illegal. **Think trees. Think twice about printing this email.**

Annette Montgomery <Annette.Montgomery@alaskaair.com>    Wed, Jan 24, 2024 at 8:52 PM
To: Wynetta Taylor <Wynetta.Taylor@alaskaair.com>
Cc: W Taylor <no1sabovethelaw@gmail.com>

**E12.**

Thank you Wynetta I appreciate it.

Would you please send me **the first 6 numbers in the lower right corner of the back of your badge?**
After that, please cut your badge into at least 6 pieces. You'll be receiving an email with a QR code, this will
enable you to drop off all of your remote agent equipment, including your headset, to the nearest FedEx.
They will box it for you and return it to Seattle.

I wish you all the best,

Annette

**Annette Montgomery**

Supervisor, PHX Contact Center

Guest CARE/ Training Liaison

P 480.394.3005

C 541.870.7411

Annette.Montgomery@alaskaair.com

5530 W Chandler Blvd, Ste. #1

Chandler , AZ 85226

alaskaair.com

 

This e-mail and any attachments may contain confidential and privileged information. If you are not the intended recipient, please notify the
sender immediately by return e-mail, delete this e-mail and destroy any copies. Any dissemination or use of this information by a person
other than the intended recipient is unauthorized and may be illegal. **Think trees. Think twice about printing this email.**

From: Wynetta Taylor <Wynetta.Taylor@alaskaair.com>
Sent: Wednesday, January 24, 2024 8:37 PM
To: Annette Montgomery <Annette.Montgomery@alaskaair.com>
Cc: W Taylor <no1sabovethelaw@gmail.com>; Cheri Starkey <Cheri.Starkey@AlaskaAir.com>; Naisin Ua

*Alaska.*
AIRLINES

## Notice of Discipline or Discharge

**E 13.**

**Date Action Taken:** 01/24/2024

**TO:**

| Employee Name: Wynetta Taylor | Employee Number: 88378 | |
|---|---|---|
| Job Title: Reservations Sales Agent | Department #: 946 | Location #: 049 |

**FROM:**

| Name: Annette Montgomery | Title: Supervisor, Reservations |
|---|---|
| Department #: 946 | Location #: 049 |

### SUBJECT: RECORD OF VIOLATION OF COMPANY RULES/REGULATIONS AND/OR UNSATISFACTORY PERFORMANCE

**CHECK ONE:** ☐ Confirmation of Oral Warning    ☐ Written Warning    ☐ Suspension Without Pay
☐ Final Warning (attendance)    ☒ Discharge

A thorough investigation has been completed and this is your notification that you are hereby charged with an infraction of Company rules/regulation and/or unsatisfactory performance.

### INFRACTION/UNSATISFACTORY PERFORMANCE:

Following a report you made to Alaska Airlines leadership regarding alleged tampering or interfering with your company-provided equipment and/or network which compromised your ability to perform your job duties, your systems were researched thoroughly by our CCO Technology Team with no findings. Your physical equipment was replaced multiple times in an attempt to alleviate the problem, including on August 29, 2023 when new, factory-sealed hardware was provided. After this new hardware was installed you reported the continuing issue so in October 2023 a comprehensive, in-depth review and investigation of the company network was conducted to ensure your work was unimpeded by our systems, processes, or any internal or external factors or individuals. This detailed review confirmed there are no mechanical issues nor network intrusion and there was no manipulation detected by internal or external factors or individuals which would impede your performance of your job duties.

A review of your performance January 9, 2023, revealed multiple occurrences where your daily time cards were submitted for full pay despite not actively performing work consistent with your job duties, for over (100) hours of time in the last 3 months. More specifically, we confirmed there were over twenty (20) hours of unproductive time found between the dates of January 4 (3.2 hours), 8 (8.2 hours), and 9 (10.9 hours), where you claimed pay for your full hours on these dates although there was no work related duties performed for several hours on each date. Prior to, during, and following our technical investigation you were provided with guidance and direction on how to report any issues that would prevent you from performing work as scheduled, yet you failed to follow that instruction. When questioned, you stated if you were having issues you would report it to a supervisor or CCO, however you did not report concerns to your leadership team or CCO for these dates. During our investigation you admitted to not following these instructions as well as openly admitting that you have submitted for full pay during this time which did not at all align with the actual amount of work you had performed. Your attempt to claim pay for time when you were not performing any work related duties is considered falsification of records and theft of time.

In addition, our additional investigation found inappropriate handling of guest misconduct reporting. As an example, on January 17, 2023, you reported a misconduct report for an interaction with a guest. Upon further review, we found this chat had no inappropriate or harassing statements. In fact, the guest was apologetic and grateful. After being confronted with the chat history you confirmed this was not harassment as you had previously reported it to be.

In October 2023, you completed your annual compliance training which included instruction for handling sensitive data and informed you that for security and compliance purposes you are not allowed to retain guests' personal information. Despite this instruction, upon further investigation, January 17, 2024, it was confirmed you had inappropriately copied and retained a guest's sensitive personal identifying information and used company resources to send this data to an outside email account, which you confirmed was where you keep personal documentation. When questioned, you provided no reasonable explanation for your actions.

You are given access to the guest PI data to ensure the successful completion of your assigned, business related duties in your role as a Reservations Agent. Our investigation concluded that there was no business-related purpose for you to access this guests record and distribute it to an email account outside of our network. Your actions compromise the integrity of the system we have in place to protect this confidential guest information. You misused your position and access to this confidential guest information which is a violation of company policy and cannot be tolerated.

2 Page 16

Last saved by DKliskey





AIRLINES

## Notice of Discipline or Discharge – Page 2

**Employee Name:** Wynetta Taylor                    **Employee Number:** 88378

### INFRACTION/UNSATISFACTORY PERFORMANCE (CONTINUED):

Your actions as described above are in direct violation of Our People Policies General Rules of Conduct as follows:

Rule #6; "Follow all order, instructions, and assignments. Failure to do so may result in discipline up to and including discharge."

Rule #9, "Involvement in a deliberate slowdown, work stoppage, or any intentional restriction of output, loafing, sleeping, or giving the appearance of sleeping on the job is prohibited."

Rule #14 "Unauthorized use of company time, material, facilities, and equipment including telephones and computers is not allowed."

Rule #15, "Falsification of records, concealing defective work, or misrepresentation of facts including time records and job applications will not be tolerated."

Rule #16, "Unacceptable quality or quantity of work, unsatisfactory job performance, or carelessness will not be tolerated."

Rule #31, "Dishonesty such as theft or pilferage of company property, the property of our customers or employees, or the misappropriation of funds, or misrepresentation to obtain pay, benefits, or privileges including fraudulent use of sick leave will be grounds for dismissal and may lead to prosecution under the law."

Additionally, your behavior violates the Contact Center Personal Conduct Policy, which states in part, "engaging in inappropriate use of systems or equipment; or providing poor service, may result in action up to and including termination," and "Intentionally disconnecting a guest, using abusive and/or profane language on an interaction with a guest or toward a co-worker; misuse of guest information, or insubordination are examples of serious misconduct that may warrant immediate termination."

Your actions are also in direct violation of the Alaska Air Group Information Security Policy and the Alaska Airlines Privacy Notice.

### ACTION TAKEN:

Given the nature of our business, and that our employees are entrusted with the responsibility to care for our guests, it is critical that we can trust our employees and that they maintain the highest levels of professionalism, respect and courtesy at all times. Your work performance as described above is unacceptable. Based on your actions, as outlined above, your business relationship with the company can no longer be maintained. You are hereby terminated from employment with Alaska Airlines, effective immediately. You are to immediately arrange for the return of all company issued equipment including your ID badge, headset and remote agent equipment.

_____          _____
Employee Signature                                  Supervisor Signature
(Your signature does not constitute an admission or agreement.)

[X] Personally handed to employee on (mm/dd/yyyy): 01/24/2024

[ ] Mailed to employee on (mm/dd/yyyy):
    Certified Return/Receipt #:

*(Mail Only When Not Possible To Present Personally)*

Original: Employee  CC: Personnel File, Supervisor, Field Team, Union (when applicable)





**From:** Annette Montgomery <Annette.Montgomery@alaskaair.com>
**Sent:** Thursday, October 13, 2022 8:43 PM
**To:** Wynetta Taylor <Wynetta.Taylor@alaskaair.com>
**Subject:** Re: Retaliation & Harassment 12OCT22-13OCT22

Hi Wynetta,

I'm so sorry this has happened. I am shocked to hear this. Please enlighten me as to what and how this happened.

I apologize for not calling you, I'm home sick today and have lost my voice.

Thanks for your understanding,

Annette Montgomery
Supervisor- PHX Contact Center
Guest CARE
Phone: 480.394.3005

---

**From:** Wynetta Taylor <Wynetta.Taylor@alaskaair.com>
**Sent:** Thursday, October 13, 2022 8:37:46 PM
**To:** Annette Montgomery <Annette.Montgomery@alaskaair.com>
**Subject:** Retaliation & Harassment 12OCT22-13OCT22

Hello Annette

I hope your week is going well. I really apologize for having to bring this issue to you. There has been a history of unlawful harassment and retaliation in the workplace. Unfortunately, the situation still has not been resolved. I received multiple work disruptions and harassment last night on 12OCT22. These work interruptions create a loss for Alaska, which should be considered. Someone in the company got into my computer system and prevented me from working. They childishly took control of my keyboard, and I was unable to key in anything or use my mouse. This lack of productivity was a waste of company time. Not only is someone intentionally choosing to spend their own time carrying out this kind of behavior, but now there are two people on the clock being paid by Alaska to work, and it is not being done. This is not a good situation and I thought you should be made aware of it.

Respectfully,
Wynetta Taylor

**Wynetta Taylor**
Reservations Sales Agent
W – 623-271-7198

*Alaska*
A I R L I N E S

This e-mail and any attachments may contain confidential and privileged information. If you are not the intended recipient, please notify the sender immediately by return e-mail, delete this e-mail and destroy any copies. Any dissemination or use of this information by a person other than the intended recipient is unauthorized and may be illegal. **Think trees. Think twice about printing this email.**

**F2.**

IWPCTV.
1.1SHOOT/WENDY
1   495G 19AUG J SATSEA HK1   740P 1000P HRS /E
TKT/TIME LIMIT
  1.T-10JUN-NET5HWJ.
  2.TE 0272323657979 SHOOT/W NET5HWD 2103/20JAN
  3.TE 0274401792295 SHOOT/W NET5HWD 2104/20JAN - UP
  4.TE 0272337552534 SHOOT/W NET5HWJ 0642/10JUN
VCR COUPON DATA EXISTS *VI TO DISPLAY

  1.NET*TRAVELER*2533551695*CNTRY 1-H
  2.NET*ARRANGER*2533551695*CNTRY 1.
  3.NET*ARGUID* 5FE23937-BC47-4E0C-87D2-FBBFA3D85867
  4.ETT*-***WENDYCSHOOT/GMAIL.COM-*
  5.NET*FORMID
  6.NET*TRAVELER*2533551695*CNTRY 1-H
  7.NET*ARRANGER*2533551695*CNTRY 1
  8.NET*ARGUID* 5FE23937-BC47-4E0C-87D2-FBBFA3D85867
  9.NET*FORMID 5K8235786D7D34C29BFEACDE2ADAFR34
ADDRESS
  N/WENDY SHOOT

PRICE QUOTE RECORD EXISTS - *PQS
RETAINED REISSUE EXISTS - *PQRS¥
FREQUENT TRAVELER
  1.AS 160641725      HK AS  1.1 SHOOT/WENDY
SEATS/BOARDING PASS
  1   495G 19AUG SATSEA HK 19A NW    1.1 SHOOT/WENDY
AS FACTS
  PCTC DATA EXISTS - PLEASE USE *P4 TO VIEW
  1.SSR DOCS AS HK1/DB/26JUL68/F/SHOOT/WENDY/C
  2.OSI AS BOFA NO MATCH 21JAN23 0109
  3.SSR DOCO AS HK1//K/TT132FZ6X///US
GENERAL FACTS
  1.OSI YY PCTC IRROPE WENDYCSHOOT/GMAIL.COM
  2.OSI YY PCTC IRROPP 2533551695*CNTRY 1
REMARKS
  1.-TBM*BA4XXXXXXXXXXXX6087¥XXXXX
  2.H-ETT/CARDHOLDER...WENDY SHOOT

You will receive an email to confirm that your fax was successfully transmitted.



---

Steve Zwerin <Steven.Zwerin@alaskaair.com>    Fri, Jan 19, 2024 at 9:13 AM
To: W Taylor <no1sabovethelaw@gmail.com>

Good morning Wynetta,

Thank you for this email. I will add it to the file.

Regards, Steve

**Steven Zwerin** *(he/him/his)*

Director, Employee Relations, Mediation, and Investigations (ERMI)

This e-mail and any attachments may contain confidential and privileged information. If you are not the intended recipient, please notify the sender immediately by return e-mail, delete this e-mail and destroy any copies. Any dissemination or use of this information by a person other than the intended recipient is unauthorized and may be illegal. **Think trees. Think twice about printing this email.**

**F4.**

## Workspace

| ⊛ | Alaska Guest ⟲ 06:59 | Alaska Guest ◯ 05:09 |

**Information**　　**History**

### Case Information　　✛　∧

| | |
|---|---|
| Origin: | Inbound chat |
| 02_Ixn_ID: | 00039aG... |
| 03_ANI: | |
| 04_Confirmation_Code: | null |
| 06_Sub_Call_Type: | InboundC... |
| 08_MP_Number: | null |
| 09_Tier | |
| 20_First_Name: | Alaska |
| 21_Last_Name: | Guest |

CONTACT

**General ∨**

Title

First Name  Alaska

Last Name  Guest

Phone Number ∨

Add Phone Number

E-mail Address ∨

Add E-mail Address

▼　Alaska Guest　◯ Connected

[10:42:23 PM] AlaskaGuest: New party 'AlaskaGuest' has joined the session
[10:42:24 PM] AlaskaGuest: You suck ass
[10:42:26 PM] system: Thank you for contacting Alaska Airlines. An agent will be with you shortly.
[10:42:30 PM] Wynetta Taylor: New party 'Wynetta Taylor' has joined the session
[10:42:35 PM] Wynetta Taylor: May I have your confirmation code, please?
[10:44:25 PM] Wynetta Taylor: Please do contact this Airline unless you have legitimate reservation business.

RESPONSES

Send

Note

Save



Workspace    ⊘ Wynetta Taylor

CONTACT

⊗    Alaska Guest  ◯ 05:21  ▨    ◯ 05:50

### Case Information

| | |
|---|---|
| Origin: | Inbound chat |
| 02_Ixn_ID: | 00039aGJTFQGDM4W |
| 03_ANI: | |
| 04_Confirmation_Code: | null |
| 06_Sub_Call_Type: | InboundChat |
| 08_MP_Number: | null |
| 09_Tier: | |
| 20_First_Name: | Alaska |
| 21_Last_Name: | Guest |

▼  Alaska Guest  ◯ Ended

[7:36:20 PM] AlaskaGuest: New party 'AlaskaGuest' has joined the session
[7:36:21 PM] AlaskaGuest: Hello
[7:36:23 PM] system: Thank you for contacting Alaska Airlines. All agents are currently assisting other guests. The wait time is between 1 and 5 minutes. We appreciate your patience.
[7:36:44 PM] AlaskaGuest: Hi I'm trying to add a reservation to my app but I can't remember the confirmation code & can't seem to find it anywhere
[7:37:34 PM] Wynetta Taylor: New party 'Wynetta Taylor' has joined the session
[7:38:19 PM] Wynetta Taylor: Sure may I have the name, departure city, and date, please?
[7:38:52 PM] AlaskaGuest: Shaelee farris Nashville Tennessee 9/25
[7:40:10 PM] AlaskaGuest: It's flight 1415
[7:40:49 PM] AlaskaGuest: Wtf !
[7:40:50 PM] AlaskaGuest: Stupid ass bitches ⟵
[7:40:58 PM] AlaskaGuest: HELLO
[7:41:23 PM] Wynetta Taylor: Do not contact this chat again!
[7:41:39 PM] Wynetta Taylor: This conversation has ended due to no response. If you still need assistance, please begin a new chat with us. Thank you for choosing Alaska Airlines. - Wynetta
[7:41:54 PM] AlaskaGuest: Hello
[7:42:53 PM] Wynetta Taylor: Party 'Wynetta Taylor' has left the session

Note

Save

RESPONSES

https://akagws.c.west.com/ul/ad/v1/index.html

1/1

**F6.**



Workspace

| Alaska Guest  02:18 | | Alaska Guest  05:25 |

**Case Information**

Origin:                          inbound chat

02_Ixn_ID:                   00039aGQBAG70D17

03_ANI:

04_Confirmation_Code:   null

06_Sub_Call_Type:       InboundChat

08_MP_Number:           null

09_Tier:

20_First_Name:          Alaska

21_Last_Name:           Guest

▼  Alaska Guest  ◯ Ended

[1:17:05 AM] AlaskaGuest: New party 'AlaskaGuest' has joined the session

[1:17:06 AM] AlaskaGuest: Fucking bitch. ⟵

[1:17:09 AM] system: Thank you for contacting Alaska Airlines. All agents are currently assisting other guests. The wait time is greater than an hour. We appreciate your patience.

[1:31:08 AM] Wynetta Taylor: New party 'Wynetta Taylor' has joined the session

[1:31:38 AM] Wynetta Taylor: Hello, this is Wynetta, how may I assist today?

[1:32:30 AM] Wynetta Taylor: This chat is reserved for professional approplate business only.

[1:33:18 AM] Wynetta Taylor: This conversation has ended due to inappropiate language.

[1:33:21 AM] Wynetta Taylor: Party 'Wynetta Taylor' has left the session

Note

Save

https://akagws.c.west.com/ui/ad/v1/index.html

# GENERAL RELEASE OF LIABILITY F7.

1. **THE PARTIES.** This General Release of Liability ("Release") made on the undersigned date below is by and between:

Releasor: Wynetta Taylor      with a mailing address of
3717 W Blackhawk Dr. Glendale AZ 85308      ("Releasor") hereby releases:

Releasee: Alaska Airline Inc.      with a mailing address of
19300 International Blvd, Seatao, WA 98188     ("Releasee").

2. **THE LIABILITY.** Under the terms of this Release and sufficiency of which is hereby acknowledged, the Releasor hereby releases and forever discharges the Releasee of:

A Negligent Hiring and Negligent Retention claim. Upon the release of employment for parties involved with stalking and criminal harassment, I will release Alaska Airlines from all future claims that may arise from this person's internal access to other employees and sensitive company information.

3. **PAYMENT.** As part of this Release, the Parties agrees to: (check one)

    ☑ - **No payment.** No payment by the Releasee to the Releasor.
    ☐ - **Payment.** Payment of $_____ due by the Releasee.

4. **RELEASE.** THEREFORE under the terms of this Agreement and sufficiency of which is hereby acknowledged, do hereby release and forever discharge the Releasee including their agents, employees, successors and assigns, and their respective heirs, personal representatives, affiliates, successors and assigns, and any and all persons, firms or corporations liable or who might be claimed to be liable, whether or not herein named, none of whom admit any liability to the undersigned, but all expressly denying liability, from any and all claims, demands, damages, actions, causes of action or suits of any kind or nature whatsoever, which now have or may hereafter have, arising out of or in any way relating to any and all injuries and damages of any and every kind, to both person and property, and also any and all injuries and damages that may develop in the future, as a result of or in any way relating to the liability. It is understood and agreed that this Release is made and received in full and complete settlement and satisfaction the causes of action, claims and demands mentioned herein; that this Release contains the entire agreement between the Releasor and Releasee; and that the terms of this Release are contractual and not merely a recital. This Release shall be binding upon the undersigned, and his respective heirs, executors, administrators, personal representatives, successors, and assigns.

Releasor's Signature: _Wynetta Taylor_      Date _____

Releasee's Signature: _____      Date _____

Page 1 of 1

**F8.**

## File Update please

W Taylor <no1sabovethelaw@gmail.com>                                     Thu, Dec 14, 2023 at 12:13 AM
To: Steven.Zwerin@alaskaair.com
Bcc: annette.montgomery@alaskaair.com

Hello Steve,

Please add the attached to my file please. Thank you for your help.

2 attachments

@State Bar Response 12DEC23.pdf
160K

J. Davis-Fraud Involvement 12DEC2023.pdf
956K

Steve Zwerin <Steven.Zwerin@alaskaair.com>                              Thu, Dec 14, 2023 at 5:30 PM
To: W Taylor <no1sabovethelaw@gmail.com>

Good afternoon Wynetta,

Yes, of course. I've been adding all of your emails to my file.

Regards, Steve

**Steven Zwerin** *(he/him/his)*

Director, Employee Relations, Mediation, and Investigations (ERMI)

From: W Taylor <no1sabovethelaw@gmail.com>
Sent: Wednesday, December 13, 2023 11:13 PM
To: Steve Zwerin <Steven.Zwerin@alaskaair.com>
Subject: File Update please

F9.

# FAX COVER SHEET

To:

From: IT

Company:

Date: 12/30/22 02:32:35 PM

Fax Number: 6468716820

Pages (Including cover):

Re: Medical certification requested - patient Wynetta Taylor (DOB 11/25/1973)

Notes:

Dear Dr. Tia Scottsdale,

Matrix has received a request for a leave of absence. Please review the following information to complete the attached certification.

Employee:                     Wynetta Taylor (DOB 11/25/1973)
Type of Leave Requested:      Self
Leave Requested is for:       Continuous, beginning 12/29/2022

If this is a continuous Leave, please list the Release to full-duty date***. _____

In order for us to make a FMLA determination, we will need to have the enclosed certification be thoroughly completed. Please ensure that this form is completed and returned to Matrix Absence Management so that we can timely process your patients request for leave. Please return the attached Certification of Health Care Provider form and fax back to my attention as soon as possible.

**Please note** The leave dates listed above are the requested dates, the Health Care Provider must determine the actual leave dates based on period of incapacity.

If leave is needed for a continuous period of time, please provide the actual or estimated release date and if any restrictions are in place upon release.

If you have any questions regarding this request, please contact me at the email or phone shown below.

Thank you,


Mark Pompermayer
Claims Examiner

Upcoming Office Closures:  Early Closure: December 30th ;  Office Closed: January 2nd

## MATRIX
ABSENCE MANAGEMENT
A MEMBER OF THE TOKIO MARINE GROUP





**|MATRIX**
ABSENCE MANAGEMENT

## Instructions: Certification of Health Care Provider

### FAMILY AND MEDICAL LEAVE ACT
#### Employee's Serious Health Condition

---

### For the Provider: WHY IS THIS FORM IMPORTANT?

*Your patient has requested leave under the FMLA. Failure to submit a timely, complete, and sufficient medical certification may result in a delay or denial of your patient's leave request and may impact his/her employment rights and status.*

- Answer, fully and completely, **PARTS A, B, C and D.** If an incomplete certification is received, this form will be returned to you to complete missing sections.

- *PROVIDING AN ESTIMATE OF TIME OFF NEEDED.* Several questions seek a response as to the frequency or duration of a condition, treatment, the time your patient needs off from work, etc.
  - o Your patient's employer is entitled to this information to plan for absences from work and to assess whether its employee is taking time off appropriately for his/her condition.
  - o Your answer should be your best estimate based upon your medical knowledge and experience, your examination of the patient, and your knowledge of the patient's medical history and condition.
  - o Terms such as "lifetime," "unknown," or "indeterminate" may not be sufficient to determine FMLA coverage.

- Limit your responses to the condition for which your patient is seeking leave of absence from work.

- A separate certification is required for each unrelated serious health condition (e.g., a broken leg and asthma).

---

### For the Employee: WHY IS THIS FORM IMPORTANT?

*You have requested leave under the FMLA. It is YOUR responsibility to ensure that this completed form is returned to Matrix within 15 days of the date you filed your leave request. Failure to submit a timely, complete, and sufficient medical certification may result in a delay or denial of your leave request and may impact your employment rights and status.*

---

IMPORTANT NOTICE: The Genetic Information Nondiscrimination Act of 2008 (GINA) prohibits employers and other entities covered by GINA Title II from requesting or requiring genetic information of an individual or family member of the individual, except as specifically allowed by this law. To comply with this law, we are asking that you not provide any genetic information when responding to this request for medical information. 'Genetic information' as defined by GINA, includes •an individual's family medical history; •the results of an individual's or family member's genetic tests; •the fact that an individual or an individual's family member sought or received genetic services; and •genetic information of a fetus carried by an individual or an individual's family member or an embryo lawfully held by an individual or family member receiving assistive reproductive services.

---

Please return certification form to confidential fax: 866-683-9548

Rev 09-15-2020

 REF 1356-5773934                    REF 1356-5773934



| Employee (Patient's Name): Wynetta Taylor | Date of Birth: 11-25-1973 |
|---|---|
| Employer: ALASKA AIRLINES | Employee's Last 4 social security number: XXX-XX-7594 |

## Employee's Own Serious Health Condition

*Notes to provider: The FMLA allows an employee to take time off from work due to his/her own "serious health condition," as that term is described in Part B below. Your patient's medical condition may satisfy more than one definition of serious health condition.*

- *It is important that you complete all sections that apply in order to ensure your patient the most appropriate FMLA leave.*
- *Limit your answers to the specific health condition for which your patient is seeking leave.*
- *If your patient has more than one unrelated serious health condition that may require leave, complete a separate form for each condition (e.g., a broken leg and asthma).*

## PART A: BACKGROUND INFORMATION

1. Approximate date your patient's condition commenced for this leave request: 12 / 09 / 2022

2. Probable duration of your patient's condition: Pending follow up evaluation: estimated 3+ months

3. Most recent 2 dates you have treated your patient for this condition: 01 / 10 / 23    01 / 25 / 23

## PART B: SERIOUS HEALTH CONDITION – *Paragraphs 4-10, continued on next page: Check and complete all sections that apply.*

4. ☐ Yes    ☒ No    Inpatient Care: *Patient has had an overnight stay in a hospital, residential treatment facility, or hospice.*

   a) Admission Date: ___ / ___ / ___    Release Date: ___ / ___ / ___

5. ☐ Yes    ☒ No    Pregnancy: *Birth of child or inability to work due to pregnancy or pre-natal care*

   a) Estimated Due Date: ___ / ___ / ___

6. Incapacity Plus Treatment ("Incapacity" means inability to perform one or more essential functions of the job due to the patient's serious health condition):
   a) ☒ Yes    ☐ No    Patient's period of incapacity has exceeded or will exceed 3 days
   b) ☒ Yes    ☐ No    Patient has required or will require at least 2 office visits within 30 days of the first day of incapacity
   c) ☒ Yes    ☐ No    Patient requires 1 office visit resulting in a regimen of continuing treatment (e.g., prescription medications or therapy under the supervision of a health care provider).

   d) Date of first treatment for this condition: 12 / 26 / 22

   e) Date of most recent treatment for this condition: 01 / 25 / 23

   f) Date of next scheduled appointment for this condition: ___ / ___ / Pending scheduling - within 2 weeks.

   g) Has your patient been prescribed medication for this condition, other than over-the-counter? ☐ Yes    ☒ No

   h) Has your patient been referred to other health care provider(s) for evaluation or treatment for this condition (such as physical therapy)? ☒ Yes    ☐ No    If yes, state the nature and expected duration of such treatments: Talk therapy for at least 3 months and then re-evaluate

REF 1356-5773934    REF 1356-5773934

SERIOUS HEALTH CONDITIONS *CONTINUED* ON NEXT PAGE

**F12.**



SERIOUS HEALTH CONDITIONS *CONTINUED* FROM PREVIOUS PAGE

---

7. ☑ Yes ☐ No  **Chronic Condition:** *Requires at least 2 visits per year for treatment by a health care provider, continues over an extended period of time and may cause episodic rather than a continuing period of incapacity (e.g. asthma, diabetes, epilepsy, etc.)*

---

8. ☐ Yes ☑ No  **Permanent or Long Term Condition:** *May not require treatment but requires supervision of the health care provider (e.g. Alzheimer Disease, terminal illness, severe stroke).*

---

9. ☐ Yes ☑ No  **Conditions Requiring Multiple Treatments:** *Periods of absence to receive multiple treatments and to recover from treatments for either (1) a condition that would require incapacity for more than 3 days in the absence of medical intervention or treatment (e.g. chemotherapy, dialysis or physical therapy for severe arthritis) or (2) restorative surgery after an accident or injury.*

---

10. ☐ **IF NONE OF THE CONDITIONS IN 4-9 ABOVE APPLY, CHECK HERE. If you check this box, stop here, sign the form at the bottom, and return.**

---

## PART C: AMOUNT AND TYPE(S) OF LEAVE NEEDED

*Notes:*
- *"Incapacity" means inability to perform one or more essential functions of the job due to the patient's serious health condition.*
- *For the following questions please provide your best estimate of frequency and duration.*
- *"Unknown," "as needed," or "indeterminate" may not be sufficient to determine FMLA coverage.*

**SELECT ONE OR MORE IF APPLICABLE –**
Example: An employee may need:
- a continuous period of leave for surgery and initial recovery, then
- a reduced schedule of 6 hours of work per day for X weeks, then
- Intermittent leave for follow-up appointments or treatment

---

11. **CONTINUOUS LEAVE (If applicable):**
   a) ☑ Yes ☐ No  *Patient will be incapacitated for a single continuous period of time due to the serious health condition.*
   b) Start date of this incapacity: 12 / 09 / 22   End date of this incapacity: 03 / 30 / 23

12. **REDUCED SCHEDULE (If applicable):**
   a) ☐ Yes ☑ No  *It is medically necessary for your patient to reduce the number of work hours based on his/her daily or weekly work schedule, due to incapacity caused by the serious health condition.*
   b) **Reduced Schedule (If applicable):** Start date: ___ / ___ / ___   End date: ___ / ___ / ___
   c) Employee can work: _____ days per week  AND  _____ hours ☐ per day OR ☐ per week

13. **INTERMITTENT LEAVE (If applicable):**
   a) ☐ Yes ☑ No  *It is medically necessary for your patient to take leave in intermittent periods of time off due to incapacity caused by flare-ups of the condition.*
   b) **Intermittent Leave (If applicable):** Start date: ___ / ___ / ___   End date: ___ / ___ / ___
   c) Estimated **FREQUENCY** of episodes (how often will your patient need to be off work due to a flare-up of the condition?):

   (#) episodes PER  ☐ Week  OR  ☐ Month  OR  ☐ Year

REF 1356-5773934                           REF 1356-5773934

**F13.**

d)  Estimated DURATION of each episode _____(#) ☐Hours  OR  ☐Days

ANSWER THE FOLLOWING QUESTIONS FOR <u>REDUCED SCHEDULE</u> OR <u>INTERMITTENT LEAVE</u> ONLY:

14. Explain why it is medically necessary for your patient to work a <u>reduced schedule</u> or take <u>intermittent leave</u> due to his/her condition:

_____

15. Is it medically necessary for your patient to attend <u>treatment or follow-up appointments</u>?  ☐ Yes  ☐ No

If yes provide the information requested in Questions 16 – 19 for medically necessary appointments:

16. Provide an estimated schedule for appointments for treatments and therapy, including:

    Dates of scheduled appointments:  ____/____/____     ____/____/____     ____/____/____

17. Estimated frequency of unscheduled appointments:

_____

18. Estimated duration of each appointment, including recovery time if needed ( but not travel time):

_____

19. Estimated end date of need for treatments or follow-up appointments: _____

## PART D: MEDICAL FACTS AND TREATMENT

20. ☑ Yes  ☐ No  Is your patient unable to perform any of his/her essential job functions due to this condition?

21. If yes, identify the specific essential job functions your patient is unable to perform:

Currently unable to work with clients due to emotional distress related to a hostile work environment caused by sexual harassment and offensive conduct.

22. Medical facts sufficient to support the need for leave (e.g., diagnosis / ICD-10 code, symptoms, hospitalization, doctor visits, regimen of continuing treatment, etc.):

F43.23; F32.1; Z56.81; Z56.6

23. ☑ Yes  ☐ No  Has the patient been referred to other health care provider(s) for evaluation or treatment? If Yes, provide the following regarding the health care provider to whom patient was referred:

Name and contact information:  Kayla Santos LMSW

Nature of treatments (e.g., cardiologist, physical therapy):  Talk Therapy

Additional information relevant to your patient's need for leave:

_____

Provider name:  Alena Thompson, FNP-C          Area of practice:  Family Practice

Address:  15051 N Kierland Blvd, Suite 200  City:  Scottsdale          State: AZ  Zip code: 85254

Phone:  646-989-3775          Fax:  646-871-6820

Signature:           Date:  01/25/2023

RETURN TO
Matrix Absence Management 2421 W. Peoria Ave, Suite 200 Phoenix AZ 85029
CONFIDENTIAL FAX: 866-683-9648

REF 1356-5773934          REF 1356-5773934

**FMLA Return-Two Week Follow Up**

F14.

Wynetta Taylor <Wynetta.Taylor@alaskaair.com>
Sun 4/16/2023 5:24 PM
To: Annette Montgomery <Annette.Montgomery@alaskaair.com>

I just wanted to check in with you to give you an update on how things are since I have been back from my FMLA leave. I am excited to be back at work. Thank you for setting aside a blocked amount of time for me to complete all new and old pieces of training. I do want to give you a heads-up on my adherence, it may be off this week. My stats should be in alignment going forward. I am adjusting since I seem to only be getting phone calls since I have been back. I was used to working mostly chats when I left.

As for working conditions, I am discouraged to say nothing has changed. In the two weeks that I have been back, I have documented multiple incidents of retaliatory harassment throughout my entire work shifts. I am beginning to accept the fact that some people simply refuse to abide by Alaska company policy or employment laws. Having come to terms with this, I am preparing for litigation. Perhaps Craig Trounce (Phoenix Manager), Brittany Miller (Training), or Nyxalyse Paul (Mediations, Employee Relations, Investigations) may have some insight into what is happening. I am hopeful things will be explained at some point. In the meantime, I will not be flooding you with daily or weekly complaints about unlawful workplace harassment. I will just say it is still present. I do not want to stop working for another 90 days. I will just continue doing the job I told Alaska I would do. I am bound by my word and signature on the contract I signed. I plan to see it through with professionalism to the best of my ability. Thank you again for always being very supportive.

Respectfully,
Wynetta Taylor

**Wynetta Taylor**
Reservations Sales Agent
W – 623-271-7198



This e-mail and any attachments may contain confidential and privileged information. If you are not the intended recipient, please notify the sender immediately by return e-mail, delete this e-mail and destroy any copies. Any dissemination or use of this information by a person other than the intended recipient is unauthorized and may be illegal. **Think trees. Think twice about printing this email.**







